# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| IN RE: | ) | |
| --- | --- | --- |
| | ) | |
| MARK H ENGEN | ) | Case No: 15-20184-13 |
| | ) | |
| MAUREEN E ENGEN | ) | |
| | ) | |
| Debtors, | ) | |

## BRIEF IN SUPPORT OF THE
## CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION

COMES NOW W.H. Griffin, Standing Chapter 13 Trustee ("Trustee"), by and through his attorney, Karie L. Fahrenholz, and for his Brief in Support of his Objection to Confirmation of debtor's Chapter 13 Plan, submits the following:

## Nature of the Case

The Trustee objects to the debtors' Amended Chapter 13 Plan (Doc. #25) as unfairly discriminatory and contends it violates 11 U.S.C. § 1322(b)(1) as debtors are proposing to specially classify their student loans at the expense of the other general unsecured creditors.

## Statement of the Facts

1. On February 4, 2015 the debtors, Mark H. Engen and Maureen E. Engen ("Debtors") filed for relief under Chapter 13 of the Bankruptcy Code. (Doc. #1).

1

2. On February 4, 2015, Debtors filed their original Chapter 13 Plan ("Plan") (Doc. #4).

3. Debtors are above median income earners and the applicable commitment period is 60 months. (Doc. #4, ¶ 1(a)).

4. Debtors' original Form B22C (hereinafter "Means Test") reflects negative disposable income. (Doc. #1, Line 45).

5. The Trustee filed an Objection to Confirmation to the original Plan on March 12, 2015, subsequently withdrew the objection, and re-filed a new Objection to Confirmation on March 13, 2015. (Doc. #16, #17, #18).

6. Debtors amended their Means Test on April 27, 2015 (Doc. #23) and amended their Plan shortly thereafter on May 4, 2015. (Doc. #25).

7. Debtors' Amended Means Test results in disposable income in the amount of $491.00 resulting in a pool of $29,460.00 ($491.00 x 60 months). (Doc. #23, Line 45).

8. Debtors' Amended Plan proposes to pay a sum of $4,197.00 per month for a period of sixty (60) months. (Doc. #25, ¶ 1(b)).

9. The Plan was amended to include Navient Solutions Student Loan as a Special Class Creditor. Paragraph 11 of Debtors' Amended Plan, titled "Special

Class Creditors," includes a box, which may be checked, the language adjacent states:

> The following listed creditors are Special Class Creditors. They will NOT share pro rata in the amount to be paid to general unsecured creditors as determined by Official Form 22C or the liquidated value of the estate pursuant to the "Best Interest of Creditors" test. Special Class Creditors will be paid pro rata with other specially classed creditors, if any, following payment of administrative claims, secured claims and priority claims in the manner provided by this Plan. (Doc. #25, ¶ 11).

10. Debtors checked the box adjacent to the above language listed and list Navient Solutions Student Loan with a debt in the amount of $34,281.00 to be paid an interest rate of "0.00" as a Special Class Creditor. (Doc. #25, ¶ 11).

11. Paragraph 11 also contains a non-standard provision section. Debtors included the following language in the non-standard provision section: " Student Loan Creditor shall be paid in full, without interest, prior to any distribution to general unsecured creditors." (Doc. #25, ¶ 11).

12. Paragraph 12 of Debtors' Amended Plan, titled "Student Loan Obligations," which states "any student loan will be paid, pro rata, with other general unsecured creditors," did not list Navient Solutions Student Loan and did not cross-reference the listing of Navient Solutions Student Loan in Paragraph 11. (Doc. #25, ¶ 12).

13. On May 22, 2015, the Trustee objected to confirmation of Debtors' Amended Plan for the following reasons:

> 1. The mortgage claim filed by BMO Harris Bank shows the mortgage has a balloon note due July 1, 2018. The Chapter 13 case will not be completed by that date. The plan needs to be amended to address how this mortgage will be paid by then.
>
> 2. The amended plan provides for a pool of $29,460, per the amended Mean's Test, however it is also adding a Special Class Creditor, Navient Solutions, for a student loan claim. The amended plan seeks to pay the student loan creditor in full ($34,281) at 0% interest rate prior to any other general unsecured creditors.
>
> 3. The Trustee objects because the amended plan's separate classification of the student loan debts unfairly discriminates against other creditors and thereby violates 11 USC Section 1322(b)(1). The nondischargeable nature of Chapter 13 debtors' student loan debt, without more, is an insufficient reason for is criminating in favor of student loan creditors. In re Knowles 501 B.R. 409 (Bankr. D. Kansas 2013). (Doc. #27).

14. It should be noted that the Debtors' proposed treatment of BMO Harris Bank is not the focus of this brief. There is a separate pending Objection to Confirmation filed by BMO Harris Bank. (Doc. #29).

15. Navient Solutions Inc. filed a claim on behalf of Dept of Education Loan Services on April 17, 2015, in the amount of $34,281.77. (Claim 8).

16. The US Department of Education also filed a claim on July 20, 2015, in the amount of $30,509.82. The Trustee notes that Debtors' Amended Plan only

4

Case 15-20184   Doc# 39   Filed 10/07/15   Page 4 of 17

addresses the Navient Solutions Student Loan. (Doc. #29). The Trustee is assuming that Debtors wish to specially classify both student loan creditors.

17. The claims bar date for all creditors is June 9, 2015, and the claims bar date for governmental units is August 5, 2015.

18. Debtor scheduled a total of $87,466.00 in unsecured claims, $220,291.00 in secured claims, and $26,723.00 in priority claims. (Doc #1, Summary of Schedules).

19. To date, creditors have filed unsecured claims totaling $91,166.70, which includes the $34,281.77 and $30,509.82, debts owed to Navient Solutions Inc. and the US Department of Education.

20. Based on currently available information, if Debtors' Amended Plan is confirmed as proposed, Debtors' non-student loan general unsecured creditors will receive 0% of their total claims ($26,375.11), while Navient Solutions Inc. and the US Department of Education will receive the Means Test calculation of $29,460.00 (approximately 45% of the total $64,791.59 owed).

21. Debtors' Amended Plan as currently proposed will not pay a dividend to the non-student loan general unsecured creditors.

22. Debtors' Amended Plan provides no explanation for the special treatment of these claims.

## Question Presented

Is it unfair discrimination under 11 U.S.C. § 1322 for above median Debtors to specially classify general unsecured student loan creditors by providing that their disposable income on the Means Test be used to pay their student loan creditors first at the expense of the other general unsecured creditors?

## Argument and Authorities

### I. Burden of Proof

Debtors, as the proponent of the plan, have the burden of showing that their Plan complies with the statutory requirements for confirmation and does not unfairly discriminate. *In re Mason*, 300 B.R. 379, 382 (Bankr. D. Kan. 2003); *In re Knowles*, 501 B.R. 409, 415 (Bankr. D. Kan. 2013) citing *In re Alexander*, 363 B.R. 917, 921-22 (10th cir. BAP 2007) (generally assigning burden of proof for confirmation to plan proponent).

## II. Debtor's Chapter 13 Plan Violates 11 U.S.C. § 1322(b)(1).

"Section 1322(a)(3) of the Bankruptcy Code requires that a Chapter 13 Plan provide for the same treatment for each claim within a particular class." *In re Mason*, 300 B.R. 379, 382 (Bankr. D. Kan. 2003). "Section 1322(b)(1), which is subject to subsection (a), permits designation of 'a class or classes of unsecured claims' but prohibits designation that 'discriminates unfairly' against any class of unsecured claims. *Id*. In the case at bar, Debtors are attempting to specially classify their non-dischargeable student loan debt(s) and partially pay it through the plan, while paying their non-student loan general unsecured creditors, whose claims are subject to discharge, nothing. Judge Nugent ruled in *In re Mason* that such treatment unfairly discriminates and thus renders a plan with such provisions unconfirmable. 300 B.R. at 387.

Because the code does not define unfair discrimination, this has been left to the discretion of the bankruptcy courts to define. Several tests have been formulated for determining when discrimination is unfair. Judge Nugent analyzed these tests in detail in *In re Mason*. The **Four-Step Test** of *In re Leser* (939 F.2d 669 (8th cir. 1991), inquires "(1) whether the discrimination has a reasonable basis; (2) whether the Debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination." *In*

7

*re Mason*, 300 B.R. at 383. The **Balancing Test** of *In re Cofer*, 159 B.R. 602 (Bank.D.Me. 1993) requires analysis of the "relative benefits and detriments allocated to the debtor and creditors from the proposed discrimination." *In re Mason*, 300 B.R. at 384. *In re Bentley*, 266 B.R. 229 (1st Cir. BAP 2001), gives us the **Baseline Test**, in which a court must evaluate the discriminatory treatment against the four Chapter 13 norms or baselines, "(1) equality of distribution; (2) nonpriority of student loans; (3) mandatory vs. optional contributions; and (4) the debtor's fresh start." *In re Mason*, 300 B.R. at 384, internal citations omitted. Finally, some courts have found fair discrimination exists so long as the proposed treatment supports a legitimate **Interest of the Debtor**, see *In re Boggan*, 125 B.R. 533 (Bankr.N.D.Ill. 1991). *In re Mason*, 300 B.R. at 385.

In *In re Mason* Judge Nugent favored *Bentley's* Baseline Test as the "most loyal to the objective goals and motivations of Chapter 13 and the Bankruptcy Code" and being "objective and fairly easy to implement." *Id* at 387. Under this analysis, Judge Nugent held that the Mason's proposed 17% dividend to student loan creditors while paying nothing to other unsecured creditors was unfairly discriminatory (a pro rata distribution would yield 7% to all unsecured creditors), also finding that debtors would only marginally benefit from the discrimination and that creditors would be unduly harmed. *Id* at 387-388.

The facts of the case at bar are very similar to the facts of *In re Mason*. In *In re Mason*, the debtors proposed a plan that specially classed their student loan creditors to the detriment of the remaining creditors. "If the debtors make all of the payments proposed in the Amended Plan, the total distribution to the student loan creditors as proposed in the Amended Plan will be $5,202.91 - the full amount available for unsecured creditors, or roughly 17% of the amount of student loan claims. The remaining general unsecured creditors would receive nothing on their claims." *Id* at 382. Debtors in the case at bar are also proposing to partially pay their student loan creditors ahead of other general unsecured claims. If Debtors in this case are allowed to pay their student loans ahead of the other creditors, as proposed in her Chapter 13 Plan, the student loan creditors would receive $29,460.00 (a dividend of roughly 45%) while the remaining unsecured creditors would receive nothing.

If Debtors proposed to pay their student loan claims pro rata with the other general unsecured claims, all of the unsecured creditors would share in the $29,460.00 available which yields a dividend of 32%. In either event, the balance of the student loan debt will be non-dischargeable. These facts are almost identical to the facts of *In re Mason*, "If the student loan claims are paid pro rata with the other general unsecured claims, all of the unsecured creditors would receive a

dividend of 7%. Under either scenario, the student loan claims would not be paid in full at the completion of the Amended Plan." *Id* at 382.

Debtors have stated no reason or factual basis for the special treatment of these claims, and none is apparent to the Trustee. Although the student loan debt would be non-dischargeable, that fact alone is an insufficient basis for discrimination. *Id* at 385.

### III. Application of the Baseline Test Pre-BAPCPA

A summary comparison of the effect on unsecured creditors under the proposed plan treatment and the treatment without separately classifying the student loan claim, is set forth below:

**Proposed Plan Treatment:**

| | |
|---|---|
| Total student loan debt | $64,791.59 |
| Total non-student loan unsecured debt | $26,375.11 |
| Total unsecured debt | $91,166.70 |
| Proposed distribution to non-student loan unsecured creditors | $0.00 |
| % Dividend to non-student loan unsecured creditors | 0.00% |
| Proposed distribution to total student loan creditor | $29,460.00 |
| % Dividend to student loan creditor (paid separately) | 45% |

10

**Baseline Treatment Without Separate Classification:**

| | |
|---|---|
| Total student loan debt | $64,791.59 |
| Total non-student loan unsecured debt | $26,375.11 |
| Total unsecured debt | $91,166.70 |
| Proposed distribution to total unsecured debt | $29,460.00 |
| % Dividend to unsecured creditors | 32% |

**The Baseline Test**

A. *Equality of Distribution*. As this comparison demonstrates, the non-student loan creditors are worse off under the proposed plan treatment than at the baseline. The non-student unsecured creditors in the case at bar are denied any distribution of the Means Test pool ($29,460.00) while the student loan creditors, who will have the ability to collect long after the discharge is granted, will receive all of the distribution.

B. *Nonpriority of Student Loan Debt*. Debtors' proposed Plan alters Chapter 13 priority and distribution schemes to the detriment of the general unsecured creditors. "Preferring holders of nondischargeable, unsecured claims like these without some showing of need or hardship results in judge-created 'priority.' Congress well knows how to create priorities, and would have expressly accorded priority to student loans, had that been its intent. Given that lack of priority,

11

chapter 13 contemplates that student loan creditors share equally in distributions like all other unsecured creditors." *In re Mason*, 300 B.R. at 386.

    C. *Mandatory versus Optional Contributions*. Debtors have given no reasonable basis, other than the student loans are non-dischargeable, for preferring the student loan creditor to the exclusion of other unsecured creditors during the applicable commitment period. Debtors are required to pay their Means Test pool ($29,460.00) to their general unsecured creditors. In the alternative, Debtors could have proposed to make discretionary payments to their student loan creditors by special classifying the student loan creditor *after* the means test pool had been satisfied under 11 U.S.C. § 1325(b).

    D. *Debtor's Fresh Start*. Although Debtors are not paying the student loans in full, payment of the entire dividend that would normally be available to all unsecured creditors reduces the amount of the non-dischargeable debt and gives debtors a 'head start' that is not otherwise provided in Chapter 13. "Indeed, the 'fresh start' in chapter 13 is not without limit." *Id* at 387. "Debtors' effort to mitigate the consequences of nondischargeable student loan debt outside the statutory scheme of chapter 13 is unfair discrimination under the facts of this case." *Id* at 387.

When comparing Debtors' proposed treatment of nonpriority unsecured creditors under the Plan against the normal treatment under Chapter 13, the proposed discrimination alters the allocation of benefits and burdens to the detriment of the class of general unsecured creditors and is therefore unfair. Debtors' proposed discriminatory treatment of general unsecured creditors does not pass the baseline test.

## IV. Application of the Baseline Test Post-BAPCPA

*In re Mason* was a pre-BAPCPA case. The fact that *In re Mason* is a pre-BAPCPA case does not change the application of the Baseline Test when determining unfair discrimination in a BAPCPA case under 11 U.S.C. 1322(b)(1).

In fact, the Bentley baseline test has been applied in two Kansas BAPCPA cases. Judge Nugent applied the *Bentley* baseline test to a BAPCPA case in *In re Stull*, 489 B.R. 217 (Bankr. D. Kan. 2013). In *In re Stull*, Judge Nugent stated, "Nothing in the enactment of BAPCPA renders the *Bentley* test obsolete." *Id* at 221. In addition, Judge Karlin applied the baseline test in *In re Knowles*, 501 B.R. 409 (Bankr. D. Kan. 2013).

The debtors in *In re Stull* and *In re Knowles* were both above median debtors who were proposing to special class their student loan creditors.

13

The above median debtor in *Stull* proposed to commit all of his projected disposable income as calculated on Form B22C to his unsecured creditors. He also proposed to use income he earned in excess of the projected disposable income that must be committed to the unsecured pot. "As it must, Stull's plan proposes committing all of his PDI to his unsecured creditors. The stipulated total amount proposed to be paid to the unsecured creditors is $8,440, yielding the non-student loan creditors a dividend of 49 percent. But Stull generates more income than the disposable income calculation yields. So, using funds other than his PDI, Stull proposes to pay the $3,722 student loan claim in full...yielding a 100 percent dividend to that creditor. Because he is not using PDI, the non-student loan creditors will receive not a dime less than they would at the baseline while the student loan will be paid in full." *In re Stull*, 489 B.R. at 221. In fact, under the debtor's proposed plan in *Stull*, the non-student loan creditors would receive a larger dividend. *Id* at 223.

Judge Nugent held that an "above-median debtor may separately classify and pay a non-dischargeable obligation from income he or she earns in excess of the projected disposable income that must be committed to the unsecured pot." *Id* at 223.

This is not the case with regard to the Debtors in that case at bar. The Debtors in this case are *not proposing* to pay a non-dischargeable obligation from

income they earn *in excess* of the projected disposable income. They are proposing to specially classify their student loan with income that must be committed to the unsecured pot.

The *Bentley* Baseline Test was also applied by Judge Karlin in *In re Knowles*, 501 B.R. 409 (Bankr. D. Kan. 2013). The debtors in *In re Knowles* were above-median debtors and were also proposing to separately classify and pay a non-dischargeable obligation from income in excess of the projected disposable income. Judge Karlin made the following finding with regard to the debtors' proposed treatment of the student loan creditors, "Based on the consideration of the Bentley factors, and a weighing of the burdens and benefits established by the Code as a baseline, this Court concludes that the direct payment to the student loan creditor of ongoing contractual payments does not constitute unfair discrimination under § 1322(b)(1). Although student loans are not accorded priority by the Code, Debtors are contributing this excess amount to the student loan debt only from funds not required by the Code to be committed to the plan." *Id* at 421.

The Trustee interprets both *In re Stull* and *In re Knowles* to allow above median debtors to specially classify their student loan payments in cases where the projected disposable income requirements under the code have been met. Essentially, the debtors in *Stull* and *Knowles* were using income in excess of their

disposable income, their discretionary (or voluntary) income, to pay their student loan creditors.

If the Debtors in the case at bar had proposed to specially classify their student loan claims after satisfying the projected disposable requirements, then this would be akin to the holdings in *In re Stull* and *In re Knowles* as they would be using their "discretionary" income after satisfying the means test requirements under the code. The Trustee believes this treatment would be allowed.

## Conclusion

Debtors have not provided sufficient justification to deviate from the terms of 11 U.S.C. § 1322(b)(1) under the Baseline Test, which is preferred by the Kansas Bankruptcy Courts. Therefore, the Trustee requests confirmation of Debtors' Amended Chapter 13 Plan be denied, and for such further relief as the Court deems just and proper.

Respectfully submitted,

*s/Karie L. Fahrenholz*
Karie L. Fahrenholz
MO #57227, Federal #78423
Staff Attorney to Chapter 13 Trustee
WH Griffin, #08060
Standing Chapter 13 Trustee
5115 Roe Blvd., Ste 200
Roeland Park, KS 66205

(913) 677-1311

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that the Debtors and Debtors' Attorney will be served either electronically or via U.S. mail.

*s/Karie L. Fahrenholz*
Karie L. Fahrenholz
MO #57227, Federal #78423
WH Griffin, #08060

Mark H Engen
Maureen E Engen
7905 W. 96th Street
Overland Park, KS 66212

Teresa M. Kidd
8700 Monrovia
Suite 310
Lenexa, KS 66215

Clerk of the Bankruptcy Court
500 State Avenue
Kansas City, KS 66101