**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 12th day of December, 2016.**



Robert D. Berger
United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In re:

MARK H. ENGEN and                    Case No. 15-20184
MAUREEN E. ENGEN,                   Chapter 13
       Debtors.

---

### MEMORANDUM OPINION AND ORDER
### APPROVING SEPARATE CLASSIFICATION AND
### DISCRIMINATION IN FAVOR OF STUDENT LOANS

Confirmation of Debtors' Chapter 13 plan is pending before the Court.[1]  William H. Griffin, the Chapter 13 trustee (Trustee), objects to confirmation and alleges Debtors' separate classification and favored treatment of presumptively nondischargeable student loans is unfairly discriminatory in violation of 11 U.S.C. § 1322(b)(1).[2]  The Debtors propose a plan in which student loan creditors are paid as a separate class before other general unsecured creditors.  The Court's reference to "separate classification" includes this favorable treatment.  The Court, having reviewed the pleadings and counsels' arguments, overrules the Trustee's objection.

---

[1]  Doc. 52. Debtors, Mark H. Engen and Maureen E. Engen, appear by their attorney, David A. Reed, Kansas City, KS. Trustee, William H. Griffin, appears by Karie L. Fahrenholz, Roeland Park, KS.
[2]  Doc. 27, 39, 57. All future statutory references are to the Bankruptcy Code (Code), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101–1532, unless otherwise specifically noted.

16.12.12 Engen Order Student Loan Special Class.wpd

Debtors' proposed plan satisfies § 1322(b)(1) because Debtors' separate classification and favored treatment of student loans does not discriminate unfairly, and the student loan claims are substantially similar.[3]

## VENUE AND JURISDICTION

This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013.[4] Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). The parties do not object to venue, jurisdiction or the Constitutional authority of this Court.

## FINDINGS OF FACT

On February 4, 2015, husband and wife Mark Engen and Maureen Engen (Debtors) filed for Chapter 13 relief.[5] Debtors are above median income. On February 4, 2015, Debtors filed a Chapter 13 Plan (the Initial Plan).[6] On March 13, 2015, the Trustee filed an objection to confirmation of Debtors' Initial Plan because: (a) Debtors' original Form B22C reflected negative disposable income; (b) the Trustee requested documentation of Debtors' cell phone expenses; and (c) Debtors did not sufficiently address a mortgage balloon payment due to BMO Harris Bank (BMO).[7] On April 27, 2015, Debtors amended their means test calculation.[8] On May 4, 2015, Debtors filed an Amended Chapter 13 Plan (the Amended Plan).[9] On May 5,

---

[3] *See* § 1322(b)(1).
[4] D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2016).
[5] Doc. 1.
[6] Doc. 4.
[7] Doc. 18.
[8] Doc. 23.
[9] Doc. 25.

16.12.12 Engen Order Student Loan Special Class.wpd

2015, the Trustee objected to confirmation of Debtors' Amended Plan.[10]  On January 23, 2016, David A. Reed entered his appearance as attorney of record for the Debtors.[11]  On February 5, 2016, Debtors filed a Fourth Amended Chapter 13 Plan (the Proposed Plan).[12]

The Debtors' proposed monthly plan payment is $4,983 per month, which will pay BMO Harris Bank NA (the first mortgagee) $15,412.46 without interest on account of its prepetition arrearage claim, $1,415.25 on account of a post-petition arrearage, and the principal due on the note in the amount of $115,622.99, all of which will pay the first mortgage note in full during the five-year commitment period.[13]  Ocwen Financial's second mortgage position is stripped off under the Plan because it is wholly unsecured; Ocwen has not filed a proof of claim and the deadline has passed.  The other secured debt paid under the Plan is to Hyundai Capital America for an auto loan in the amount of $34,646.87.  The priority tax claims paid through the Plan for the Internal Revenue Service and the Kansas Dept. of Revenue aggregate $25,381.67; in addition, Debtors owe non-priority unsecured tax claims in the amount of $7,556.22.  Non-priority general unsecured debt on which proofs of claim have been filed total $91,120.30, of which $64,791.59 are student loans.  The Debtors propose to pay various administrative expenses under the Plan, including the Trustee's fee and the unpaid balance on administrative priority attorney fee claims.  A summary of the proposed Plan treatment and prepetition payments to unsecured creditors is set out below. On February 8, 2016, Debtors filed an updated Form 122C which shows that their average monthly income is $12,126.00 and their monthly disposable income is -$1,122.23.[14]  On February 24, 2016, the Trustee filed an objection to confirmation of Debtors' Proposed Plan as to the separate classification; there are no other

---

[10]  Doc. 27.
[11]  Doc. 51. Debtors appeared by attorney, Teresa M. Kidd, Lenexa, KS, until January 23, 2016.
[12]  Doc. 52. Debtors' Proposed Plan resolved the Trustee's objection regarding BMO's claim.
[13]  The anti-modification provision under § 1322(b)(2) does not apply because the mortgage note balloons in 2018, which is during the five-year commitment period of the Plan.
[14]  Doc. 54.

16.12.12 Engen Order Student Loan Special Class.wpd

objections to confirmation.[15]

Debtors' Proposed Plan treats student loan creditors Navient Solutions (Navient) and the U.S. Department of Education as separately classified creditors pursuant to § 1322(b)(1).[16] The Proposed Plan provides that separately classified student loan creditors will be paid without post-petition interest before other general unsecured claims. Together, the debts to Navient and the U.S. Department of Education comprise the Student Loan Claims. Navient's $34,281.77 claim arises from Mark Engen's Direct PLUS Loan with the U.S. Department of Education.[17] Mark is a parent borrower on behalf of his dependent son.[18] The U.S. Department of Education's $30,509.82 claim arises from student loans originated by Maureen Engen.[19] The total balance of the Student Loan Claims is $64,791.59.

Debtors' Proposed Plan states that the Student Loan Claims:

[W]ill NOT share pro rata in the amount to be paid to general unsecured creditors as determined by Official Form 22C or the liquidated value of the estate pursuant to the "Best Interest of Creditors" test. Special Class Creditors will be paid pro rata with other specially classed creditors, if any, following payment of administrative claims, secured claims and priority claims in the manner provided by this Plan.[20]

Creditors have filed priority claims totaling $25,381.67, secured claims totaling $213,751.40, and general unsecured claims totaling $91,120.30. The Student Loan Claims of $64,791.59 comprise over 71 percent of the general unsecured claims.[21] Debtors' Proposed Plan also states: "Pay available funds, if any, to filed and allowed student loan claims. No available funds are projected or anticipated."[22] Paragraph 12, titled Student Loan Obligations, of Debtors'

---

[15] Doc. 57. The Trustee originally objected to the Amended Plan—not the Proposed Plan. However, Debtors' Proposed Plan did not resolve the Trustee's student loan separate-classification objection.

[16] Doc. 52, at 9–10 ¶ 11.

[17] Claim 8-1. PLUS loans are federal loans for graduate students and parents of dependent undergraduate students.

[18] Parents cannot transfer a Direct PLUS Loan to a child. The parent is responsible for repaying the loan. *See Direct PLUS Loan Basics for Parents*, http://www.studentaid.ed.gov/sa/sites/default/files/direct-loan-basics-parents.pdf.

[19] Claim 24-1. The private creditor claim bar date was June 9, 2015, and August 5, 2015, for government creditors.

[20] Doc. 52, at 9 ¶ 11. A special class creditor is synonymous with a separately classified or separate class creditor under § 1322(b)(1).

[21] Under the Kansas Form Chapter 13 Plan, "general unsecured claims" refers to non-priority unsecured claims.

[22] Doc. 52, at 10 ¶ 11.

16.12.12 Engen Order Student Loan Special Class.wpd

Proposed Plan does not list the Student Loan Claims or reference their listing as separately classified creditors in paragraph 11.[23] Debtors' Proposed Plan would have paid a zero percent dividend to Student Loan Claims and a zero percent dividend to other general unsecured creditors—based on circumstances that existed at the time the Proposed Plan was filed. However, since the filing of their case, Maureen has received a pre-tax distribution in the amount of $73,269.34 as the beneficiary of a parent's IRA.[24] Since Maureen became entitled to this distribution more than 180 days after the filing of the case, then to the extent applicable, it does not fall within the ambit of § 541(a)(5). Nevertheless, Debtors concede that the beneficial IRA distribution is property of the estate under § 1306, possibly freeing up assets or income for distribution to general unsecured claimants.[25] At this point, the distribution and use of the proceeds are not resolved. It is not necessary that it be resolved prior to this Court's ruling on separate classification. Regardless, even if there were not a pending issue with regard to the distribution, the issue as to separate classification is ripe for adjudication since Chapter 13 debtors' acquisition of post-petition property or material increase in income is a common occurrence.

The Trustee's May 5, 2015, objection to confirmation alleges Debtors' separate classification of the Student Loan Claims unfairly discriminates against general unsecured creditors in violation of § 1322(b)(1).[26] The Trustee asserts that under *Knowles*,[27] the nondischargeable nature of Debtors' student loans, without more, is insufficient to discriminate in favor of the Student Loan Claims.[28]

Debtors' initial brief asserts the separate classification of Student Loan Claims is fair

---

[23] Doc. 52, at 9–10 ¶ 11 and 12.
[24] Doc. 62; Motion to Reconsider, Doc. 70.
[25] It is unclear whether the beneficial interest existed on the petition date, which could affect the liquidation test under § 1325(a)(4); the beneficial interest was not listed on the Debtors' schedules.
[26] Doc. 27.
[27] *In re* Knowles, 501 B.R. 409 (Bankr. D. Kan. 2013).
[28] Doc. 27.

16.12.12 Engen Order Student Loan Special Class.wpd

under § 1322(b)(1).[29]  Debtors voluntarily participated in a Debt Management Plan (DMP)

through Money Management International (MMI) prior to seeking Chapter 13 relief.[30]  Debtors

deposited $79,445 with MMI from January 18, 2011, to November 17, 2014.  MMI disbursed

$78,629.98 to prepetition general unsecured creditors.[31]  Debtors' MMI Account Summary[32]

indicates that, prior to filing bankruptcy, and after interest and penalties charged by creditors

during the repayment period, the Debtors paid down their non-student loan unsecured debts from

$73,884.89 to $12,192.16—a net reduction of $61,692.73 over 47 months.  All of Debtors' MMI

payments went to unsecured creditors but "[a]bsolutely none of the $79,445 went to the student

loan creditors."[33]

     Unfortunately, Debtors' participation in MMI's DMP was not all positive.  Debtors did

reduce their general unsecured debt, but fell into default on their home mortgage and note and

Student Loan Claims.[34]  Further, to help fund their DMP, Debtors reduced their income tax

withholdings.[35]  This reduction resulted in an Internal Revenue Service priority tax claim of

$22,277.06[36] and a Kansas Department of Revenue priority tax claim of $3,104.61.[37]

     Debtors also rely on *Knowles,*[38] arguing that while "their plan appears to discriminate

against the other general unsecured creditors, this treatment is not forbidden" because

§ 1322(b)(1) allows discriminatory treatment so long as a plan "does not discriminate

unfairly."[39]  Debtors contend the separate classification of the Student Loan Claims does not

discriminate unfairly as "[n]early 80% of debtors [sic] unsecured debts [excluding student loans]

---

[29]  Doc. 41.
[30]  *Id.* at 4.
[31]  Doc. 41-1, at 2.
[32]  *Id.* at 2–3.
[33]  Doc. 41, at 4.
[34]  *Id.*
[35]  *Id.*
[36]  Claim 6-2. For tax years 2011, 2012, 2013, and 2014.  The Court was informed at the most recent hearing by the Trustee that additional liability is due for the tax year 2015.  However, a proof of claim has not been filed by the obligee.
[37]  Claim 2-2. For tax years 2012 and 2014.  The Court was informed at the most recent hearing by the Trustee that additional liability is due for the tax year 2015.  However, a proof of claim has not been filed by the obligee.
[38]  *In re* Knowles, 501 B.R. 409, 415 (Bankr. D. Kan. 2013).
[39]  Doc. 41, at 4–5.

16.12.12 Engen Order Student Loan Special Class.wpd

were paid immediately prior to the filing of their bankruptcy case."[40]  As noted, the Court's reference to "separate classification" contemplates the favorable treatment provided to the student loans in the separate class.

| SUMMARY OF FILED CLAIMS | |
|---|---|
| **Filed Claims** | |
|   **Total Priority Claims** | **$ 25,381.67** |
|   **Total Secured Claims** | **$ 213,751.40** |
|   **Student Loan Claims** | **$ 64,791.59** |
|   **Non-Student Loan General Unsecured Claims** | **$ 26,328.71** |
|   **Total General Unsecured Claims** | **$ 91,120.30** |
| **Proposed Separate Classification Payment Based on Debtors' Current Circumstances** | **Undetermined** |
| **PREPETITION PAYMENTS TO GENERAL UNSECURED CREDITORS** | |
| **Beginning General Unsecured Debt Balance (excludes student loan)** | **$ 73,884.89** |
| **Debtors' Prepetition Payments to MMI (Debt Repayment Plan)** | **$ 79,445.00** |
| **MMI Disbursements to General Unsecured Creditors** | **$ 78,629.98** |
| **Ending General Unsecured Debt Balance** | **$ 12,192.16** |
| **General Unsecured Debt Principal Reduction Through MMI** | **$ 61,692.73** |
| **Dividend to General Unsecured Creditors Through MMI** | **83%** |

The Proposed Plan provides that the Student Loan Claims will be paid in full without post-petition interest before payment of other general unsecured claims.  Under the Kansas Form Chapter 13 Plan, "general unsecured creditors" excludes unsecured priority claims.  The MMI payments did not pay the non-student loan general unsecured debt in full because of the accrual of interest and penalties during the repayment period.

---

[40] *Id.* at 5.

16.12.12 Engen Order Student Loan Special Class.wpd

**ANALYSIS**

A.     **Law**

The provisions of the Code applicable to this decision are §§ 523, 1122, 1129, 1322, and

1325.

Section 523(a)(8) provides:

(a) discharge under section . . . 1328(b) of this title does not discharge an
individual debtor from any debt–
> (8) Unless excepting such debt from discharge under this paragraph would
> impose an undue hardship on the debtor and the debtor's dependents, for
>> (A)(I) an educational benefit overpayment or loan made, insured, or
>> guaranteed by a governmental unit . . . ; or
>> (ii) an obligation to repay funds received as an educational benefit,
> scholarship, or stipend; or
> (B) any other educational loan that is a qualified education loan . . .

Section 1122 provides:

(a)     Except as provided in subsection (b) of this section, a plan may place a
claim or an interest in a particular class only if such claim or interest is
substantially similar to the other claims or interests of such class.
(b)     A plan may designate a separate class of claims consisting only of every
unsecured claim that is less than or reduced to an amount that the court
approves as reasonable and necessary for administrative convenience.

Section 1129(b)(1) provides:

Notwithstanding section 510(a) of this title, if all of the applicable requirements
of subsection (a) of this section other than paragraph (8) are met with respect to a
plan, the court, on request of the proponent of the plan, shall confirm the plan
notwithstanding the requirements of such paragraph if the plan does not
discriminate unfairly, and is fair and equitable, with respect to each class of
claims or interests that is impaired under, and has not accepted, the plan.

Section 1322 in pertinent part provides:

The plan–
> (3) if the plan classifies claims, shall provide the same treatment for each
> claim within a particular class, . . .and
(b) Subject to subsections (a) and (c) of this section, the plan may–
> (1) designate a class or classes of unsecured claims, as provided in section
> 1122 of this title, but may not discriminate unfairly against any class so
> designated; . . .
> (5) . . . provide for the curing of any default within a reasonable
> time and maintenance of payments while the case is pending on
> any unsecured claim or secured claim on which the last payment is
> due after the date on which the final payment under the plan is

- 8 -

16.12.12 Engen Order Student Loan Special Class.wpd

due. . . .

Section 1325(a)(1) provides:

> (a) Except as provided in subsection (b), the court shall confirm a plan if–
> (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

Under Chapter 13, a debtor uses post-petition disposable income to pay prepetition debts under a confirmed plan over a three- to five-year commitment period. Debtors are above median income and propose a five-year commitment period. While debtors must provide for payment of priority claims under § 507 in full over the life of the plan,[41] they seldom pay nonpriority unsecured debt in full. The Court may confirm a plan failing to pay nonpriority unsecured debt in full if "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan."[42] Thus, confirmed plans failing to pay all nonpriority unsecured debts retain a debt balance at the end of the commitment period. A full compliance discharge under § 1328(a) discharges the remaining balance. However, a § 1328(a) discharge is subject to exceptions, and a debtor's liability for those debts excepted from discharge continues after plan completion. Student loans are one of those debts excepted from discharge under § 1328(a).[43]

## B. Discharge of Student Loans and the Undue Hardship Test Under § 523(a)(8)

"Despite the continued growth of student loan debt, Congress has increasingly restricted a debtor's ability to discharge his or her student loans through bankruptcy."[44] In 1978, Congress added § 523(a)(8), prohibiting the discharge of federal student loans in a Chapter 7 proceeding

---

[41] An exception to this requirement for assigned Domestic Support Obligations does not apply here. *See* § 1322(a)(4).

[42] § 1325(b)(1)(B).

[43] § 1328(a) incorporates § 523(a)(8) by reference.

[44] Jennifer Grant & Lindsay Anglin, *Student Loan Debt: The Next Bubble?*, 32-DEC AM. BANKR. INST. J. 44, 44 (2013). *See also* Brendan Baker, *Deeper Debt, Denial of Discharge: The Harsh Treatment of Student Loan Debt in Bankruptcy, Recent Developments, and Proposed Reforms*, 14 U. PA. J. BUS. L. 1213, 1218 (2012) ("[L]egislation . . . shows a clear progression towards complete nondischargeability of all forms of student loans in bankruptcy.").

16.12.12 Engen Order Student Loan Special Class.wpd

unless they were due and owing for five years. "Congress was primarily concerned about abusive student debtors and protecting the solvency of student loan programs."[45] Congress wanted "to remove the temptation of recent graduates to use the bankruptcy system as a low-cost method of unencumbering future earnings."[46] In 1990, Congress extended the nondischargeability provision to Chapter 13 full compliance discharge cases and extended the five-year waiting period to seven years.[47] In 1998, a Code revision eliminated all waiting periods as a means to discharge a student loan. In 2005, Congress added § 523(a)(8)(B), extending nondischargeability to private student loans—not only government-related student loans.[48] Under § 523(a)(8), student loans are nondischargeable, "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents."[49]

Debtors seeking a § 523(a)(8) undue hardship discharge are required to file an adversary proceeding under Fed. R. Bankr. P. 7001(6).[50] This "bankruptcy litigation is sufficiently expensive, and . . . so demanding, that debtors rarely even try to have student loan debt discharged."[51] In a Chapter 13 case, debtors cannot seek an undue hardship discharge under § 523(a)(8) until "after completion by the debtor of all payments under the plan."[52] Clearing

---

[45] Educ. Credit Mgmt. Corp v. Polleys (*In re* Polleys), 356 F.3d 1302, 1309 (10th Cir. 2004). *See also* Santa Fe Med. Svcs., Inc. v. Segal (*In re* Segal), 57 F.3d 342, 348 (3rd Cir. 1995) ("Congress sought principally to protect government entities and nonprofit institutions of higher education . . . from bankruptcy discharge.").

[46] *Polleys*, 356 F.3d at 1306. *But see* Baker, *supra* note 44, at 1217 (indicating that when the 1970 Bankruptcy Act Commission considered the issue "less than one percent of government-backed loans were discharged in bankruptcy) (citing H.R. Doc. No. 93-137, pt. 1, at 178 n.5 (1973)).

[47] Grant, *supra* note 44, at 44.

[48] *Id.*

[49] § 523(a)(8).

[50] *But see* United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 262 (2010) (finding that "[a]lthough the Bankruptcy Court's failure to find undue hardship was a legal error, the confirmation order is enforceable and binding on [the creditor] because it had actual notice of the error and failed to object or timely appeal."). Unless otherwise noted, all references to Rules herein are to the Federal Rules of Bankruptcy Procedure.

[51] Daniel A. Austin, *Student Loan Debt in Bankruptcy: An Empirical Assessment*, 48 SUFFOLK U.L. REV. 577, 582 (2015).

[52] § 1328(a). *See also* Bender v. Educ. Credit Mgmt. Corp. (*In re* Bender), 368 F.3d 846 (8th Cir. 2004) (stating that undue hardship should be determined at the time of discharge, not at commencement of the § 523(a)(8) proceeding); Raisor v. Educ. Loan Serv. Ctr., (*In re* Raisor), 180 B.R. 163 (Bankr. E.D. Tex. 1995) (dismissing as premature a student loan dischargeability action when filed seven months after the Chapter 13 plan, but three years before the plan's scheduled completion).

16.12.12 Engen Order Student Loan Special Class.wpd

§ 523(a)(8)'s undue hardship hurdle is challenging and confusing for debtors because the Code does not define what constitutes undue hardship. Courts apply a variety of judicially formulated tests that are frequently criticized by commentators because debtors "must establish a certainty of hopelessness to achieve a discharge."[53]

For many debtors, achieving an undue hardship discharge is an exercise in futility. In 2010, a U.S. Bankruptcy Court found that a man suffering from diabetes and kidney disease leading to legal blindness had not shown the requisite certainty of hopelessness, despite the Social Security Administration's finding that his blindness constituted a permanent disability.[54] One bankruptcy court noted that "hardship discharges are rarely granted other than in the case of a debtor's death."[55] Section 523(a)(8) imposes harsher consequences on student loan debtors than those debtors who hold gambling debts or abuse most forms of consumer credit[56] or, for that matter, other debts owed to the federal government. "No other legitimately contracted consumer loan . . . is subjected to the assumption of criminality. . . ."[57] The result is that § 523(a)(8) "renders student loan debt presumptively nondischargeable" while other § 523(a) debts are "presumptively *dischargeable*."[58] For student loan debts, debtors must prove dischargeability as opposed to other § 523(a) exceptions which require creditors to prove nondischargeability. Section 523(a)(8) sets a "near-impossible burden for which reform is needed."[59]

## C. Chapter 13 Separate Classification and Discrimination

Section 1322(b)(1) is permissive and allows debtors to designate and discriminate

---

[53] Grant, *supra* note 44, at 45. In the 10th Circuit, the test is less rigorous. *In re* Polleys, 356 F.3d at 1308.
[54] Wallace v. Educ. Credit Mgmt. Corp. (*In re* Wallace), 443 B.R. 781 (Bankr. S.D. Ohio 2010).
[55] *In re* Cummins, 266 B.R. 852, 855 (Bankr. N.D. Iowa 2001).
[56] Jane Quinn, *Student Loans: Time to Reform the Law That Treats Debtors Like Crooks* (Sept. 24, 2010, updated Dec. 13, 2013), http://www.cbsnews.com/news/student-loans-time-to-reform-the-law-that-treats-debtors-like-crooks/.
[57] Baker, *supra* note 44, at 1217 (quoting H.R. Rep. No. 94-1232, at 75 (1976), reprinted in H.R. Rep. No. 95-595, at 149 (1977), and 1978 U.S.C.C.A.N. 5963, 6110).
[58] United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 277 n.13 (2010) (italics in original); 3 BANKR. SERVICE L. ED. § 27:1524 (citing cases holding that student loans are presumptively nondischargeable).
[59] Grant, *supra* note 44, at 88.

16.12.12 Engen Order Student Loan Special Class.wpd

between unsecured creditors in a Chapter 13 plan as provided by § 1122.[60]  However, debtors

may not discriminate unfairly.[61]  Section 1122(a) allows the separate classification of claims that

are substantially similar.  In a Chapter 11 case, § 1129(b)(1) requires that a plan "not

discriminate unfairly, and is fair and equitable."[62]  In Chapter 13, § 1322(b)(1) contains the

prohibition that the plan may not discriminate unfairly against any class designated for separate

classification.  The Code allows fair discrimination[63] and in Kansas, the Model Form Chapter 13

Plan provides for separately classified creditors.[64]  Section 1122(a) only requires that "dissimilar

claims not be classified together."[65]  "There is no requirement that all substantially similar claims

be placed in the same class nor is there a prohibition against classifying substantially similar

claims separately."[66]  "Classification is simply the grouping together of claims with respect to

which the plan proposes a common treatment."[67]  The fact that some unsecured creditors will

receive more than others does not mean that discrimination is unfair; "[e]ach case must be

decided on its own merits."[68]

     Separate classification makes "Chapter 13 flexible and more attractive to Debtors . . .

[and] encourage[s] debtors to file Chapter 13 proceedings instead of Chapter 7."[69]  On motion

and after notice and a hearing, bankruptcy courts may rule on the classification of claims under

Rule 3013.[70]  Several cases have held that the nondischargeable nature of student loan debt is

---

[60]  *See* § 1322(b)(1).
[61]  *Id.*
[62]  § 1129(b)(1).
[63]  Stephen L. Sepinuck, *Rethinking Unfair Discrimination in Chapter 13*, 74 AM. BANKR. L.J. 341, 341 (2000).
[64]  D. Kan. Standing Order No. 12-1, *printed in* D. Kan. Rules of Practice and Procedure at 119 (March 2016), *available at* http://www.ksb.uscourts.gov/images/local_rules/SO_12_1.pdf.
[65]  7 COLLIER ON BANKRUPTCY ¶ 1122.03[1], at 1122-6 to 1122-7 (Alan N. Resnick & Henry J. Sommer, eds. 16th ed. 2016).
[66]  *In re* City of Colorado Springs Spring Creek Gen. Improv. Dist., 187 B.R. 683, 687 (Bankr. D. Colo. 1995).
[67]  *In re* Bentley, 266 B.R. 229, 236 (B.A.P. 1st Cir. 2001).
[68]  *In re* Kovich, 4 B.R. 403, 407 (Bankr. W.D. Mich. 1980).
[69]  James B. McLaughlin, Jr., and Robert W. Nelms, *Classification of Unsecured Claims in Chapter 13 of the Bankruptcy Reform Act of 1978: What is Fair?*, 7 CAMPBELL L. REV. 329, 346 (1985).
[70]  This is a seldom used procedure in Chapter 13.

16.12.12 Engen Order Student Loan Special Class.wpd

sufficient to allow separate classification.[71]  "[C]ourts have allowed the separate classification of debts that would be nondischargeable in a chapter 7 case, reasoning that Congress itself indicated a policy choice to distinguish such debts."[72]  Public policy also supports the separate classification of student loans.[73]  Student loans adversely affect a debtor's ability to pay debt before and after bankruptcy.  This difficulty is amplified by the loan's nondischargeable nature and negatively impacts the economy and lenders.  Failing to allow separate classification and favorable treatment of student loans leads to a disharmonious outcome under the Code in which student loans are special enough not to discharge unless the rigorous undue hardship test is met, but not sufficiently special to separately classify.  Separate classification is proper under the Code and student loans "can be classified separately from other types of Schedule F nonpriority unsecured debt."[74]  The issue before the Court is whether Debtors' proposed separate classification and favorable treatment of the Student Loan Claims is unfairly discriminatory under § 1322(b)(1).[75]  Debtors bear the burden to show their Proposed Plan passes § 1322(b)(1) scrutiny.[76]

**D.     Judicially Formulated § 1322(b)(1) Unfair Discrimination Tests**

Both Chapter 11 and Chapter 13 allow separate classification of general unsecured debt

---

[71] *See In re* Gregg, 179 B.R. 828 (Bankr. E.D. Tex. 1995) (finding that separate classification for nondischargeable student loans was not unfairly discriminatory against other unsecured creditors); *In re* Boggan, 125 B.R. 533 (Bankr. N.D. Ill. 1991) (holding that a Chapter 13 plan properly placed an educational loan into a special class and allowed payment at a higher rate than other unsecured debts); *In re* Freshley, 69 B.R. 96 (Bankr. N.D. Ga. 1987) (holding that Congressional intent encouraging repayment of student loans is a sufficient basis for separate classification and is not unfairly discriminatory to other unsecured creditors).

[72] 8 COLLIER ON BANKRUPTCY ¶ 1322.05[2], at 1322-18–19 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2016). *See also Freshley*, 69 B.R. at 98.

[73] *See In re* Sullivan, 195 B.R. 649 (Bankr. W.D. Tex. 1996) (prompt payment of some student loans may warrant separate classification and more favorable treatment because nonpayment of federally guaranteed loans imposes a direct burden on taxpayers); *Freshley*, 69 B.R. 96 (underlying policy choices of Congress to encourage repayment of student loans provides a sufficient basis for the debtor's separate classification).

[74] DANIEL A. AUSTIN & SUSAN E. HAUSER, GRADUATING WITH DEBT: STUDENT LOANS UNDER THE BANKRUPTCY CODE 69–70 (ABI, 2013). *See also In re* Potgieter, 436 B.R. 739, 743 (Bankr. M.D. Fla. 2010) ("[T]he separate classification of the debtor's student loan obligations does not violate Section 1122."); *In re* Coonce, 213 B.R. 344, 345 (Bankr. S.D. Ill. 1997) (separate classification of student loan debt is permissible).

[75] *See* McCullough v. Brown (*In re* Brown), 162 B.R. 506, 508 (N.D. Ill. 1993) (explaining that the right to separately classify student loans is not an issue; the only issue is that of unfair discrimination, which is different from classification).

[76] Groves v. LaBarge (*In re* Groves), 39 F.3d 212, 214 (8th Cir. 1994); *In re* Janssen, 220 B.R. 639, 643 (Bankr. N.D. Iowa 1998).

16.12.12 Engen Order Student Loan Special Class.wpd

but prohibit unfair discrimination[77] and "many courts have looked to cases interpreting one for assistance in applying the other."[78]  Support for this analysis stems from § 1322(b)'s specific reference to § 1122.  However, unfair discrimination should be less stringent in Chapter 13 than in Chapter 11.[79]  First, in Chapter 11, voting class gerrymandering is a concern.  In contrast, in Chapter 13, creditors do not vote and are protected by their ability to object to confirmation of a plan without fear of waiver from other creditors.  Thus, "unfair discrimination should be a less strict requirement in Chapter 13, to avoid giving each creditor the power to unduly hold up confirmation."[80]  Second, "the allegations of unfair discrimination [in Chapter 11] are likely to involve very different issues than those that arise in Chapter 13 and the results of a refusal to confirm the plan are drastically different."[81]  Chapter 13 unfair discrimination issues commonly include nondischargeable claims while nondischargeability infrequently affects unfair discrimination issues in Chapter 11.[82]  Under § 1141(d)(2), the § 523(a) exceptions to discharge do not apply to a non-individual Chapter 11 plan of reorganization.  Finally, if confirmation is denied, a business debtor under Chapter 11 may terminate operations and liquidate while an individual Chapter 13 debtor cannot simply cease to exist.[83]  Therefore, the unfair discrimination analysis under Chapter 13 should be more lenient than under Chapter 11.

Within the context of Chapter 11, much of the litigation regarding separate classification of claims arises from a debtor's efforts to separately classify large deficiency claims associated with the strip down of debts secured by commercial real estate.  These efforts are seldom met

---

[77]  §§ 1129(b) and 1322(b).
[78]  Sepinuck, *supra* note 63, at 348.
[79]  *Id*. at 349. *See also* Bruce A. Markell, *A New Perspective on Unfair Discrimination in Chapter 11*, 72 Am. Bankr. L.J. 227, 245  (1998) (indicating that Chapter 11 unfair discrimination analysis needs a tougher standard than Chapter 13 because the Chapter 13 standard needs to address stalwarts raising unfair discrimination as an absolute right).
[80]  Sepinuck, *supra* note 63, at 349. *See also* Markell, *supra* note 79, 245 (indicating that a Chapter 13 creditor or the standing trustee may "holdup confirmation if a court adopts a strict test of unfair discrimination.").
[81]  Sepinuck, *supra* note 63, at 351.
[82]  *Id*.
[83]  *Id*.

16.12.12 Engen Order Student Loan Special Class.wpd

with success,[84] but in another aspect of Chapter 11 proceedings, it is insightful that unsecured creditors who are critical to a debtor's reorganization efforts are frequently paid in order to keep the doors of a business open.[85]  A Chapter 11 debtor requests this special treatment in what are colloquially referred to as First Day Motions.[86]  As a result, prepetition creditors may be paid for prepetition debts at the onset of Chapter 11 proceedings, well before it is determined whether the debtor-in-possession will successfully reorganize or liquidate its assets under a plan or under a § 363 sale.  It is disconsonant to allow such relief to a Chapter 11 business, but not to allow a debtor to separately classify a student loan debt.  Chapter 11 business debtors are not entitled to greater benefits of reorganization than Chapter 13 consumer debtors.

Cases have reached varying outcomes on whether a Chapter 13 plan that separately classifies *and* provides favorable treatment to student loan creditors is unfairly discriminatory under § 1322(b)(1).  The Code does not define unfair discrimination and "courts have struggled to define the limits of unfair discrimination under § 1322(b)(1)."[87]  Courts "have developed a variety of tests, criticized them, and then continued to apply them."[88]  "[D]ecisions have run the gamut of everything goes to nothing is allowed."[89]  It has been observed that, "a majority of courts have reached the wrong result in a significant percentage of the cases involving claims of unfair discrimination" regarding debtors favoring nondischargeable student loan claims.[90]  Determining fairness is best left to the discretion of the "first-line decision maker, the bankruptcy judge"[91] and "[t]he Court has wide discretion in determining whether proposed

---

[84]  ROBERT J. ROSENBERG, ET AL., A LENDER'S PARTICIPATION IN A CHAPTER 11 CASE § 13[2] at 72-73 n.5 (2009); DAVID R. KUNEY & ALEX R. ROVIRA, THE SINGLE ASSET REAL ESTATE CASE BASIC PRINCIPLES AND STRATEGIES 127-131 (2012).
[85]  *See* 2 COLLIER ON BANKRUPTCY ¶ 105.02[4][a], at 105-20 to 105-24 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2016).
[86]  DEBRA I. GRASSGREEN, ET AL. FIRST DAY MOTIONS 58-68 (3rd ed. 2012).
[87]  *In re* Knowles, 501 B.R. 409, 415 (Bankr. D. Kan. 2013); *In re* Bentley, 266 B.R. 229, 237 (B.A.P. 1st Cir. 2001). *See also* Sepinuck, *supra* note 63, at 342.
[88]  Sepinuck, *supra* note 63, at 342.
[89]  *In re* Hill, 4. B.R. 694, 697 (Bankr. D. Kan. 1980).
[90]  Sepinuck, *supra* note 63, at 342.
[91]  *Knowles*, 501 B.R. at 416 (*quoting In re* Crawford, 324 F.3d 539, 542 (7th Cir. 2003)).

16.12.12 Engen Order Student Loan Special Class.wpd

discrimination is unfair discrimination."[92]

A multitude of judicially created methods examine when discrimination is unfair. The Strict Approach from *Iacovoni*[93] forbids any discrimination unless explicitly authorized by the Code. *Iacovoni's* specific holding was superseded by statute.[94] The Flexible Approach advanced in *Sutherland*[95] treats § 1322(b)(1)'s unfair discrimination provision as requiring no more than compliance with § 1325(a)(4)'s best interests of the creditors test. However, the *Sutherland* holding "effectively renders the prohibition [against unfair discrimination] meaningless, reading it out of the Code entirely"[96] and "courts have shown no enthusiasm for this approach."[97] The Balance Approach in *McCullough*[98] requires the debtor to "place something material onto the scales to show a correlative benefit to the other unsecured creditors."[99] The Balance Approach has not received much deference and "fails to provide a way to consider other strong public policies that may justify discriminatory treatment."[100] The Reasonableness Approach examines whether the proposed discrimination is reasonable.[101] This test "leaves the matter to the personal views and values of the judges without providing any real guidance, predictability, or consistency."[102] The Reasonableness Approach fails because it "simply replaces the vague term 'unfair' with the equally vague term 'reasonable.'"[103] The Bright-Line Approach,[104] Percentage of Repayment Approach,[105] and Interest of Debtor

---

[92] *Knowles*, 501 B.R. at 415.

[93] 2 B.R. 256 (Bankr. D. Utah 1980).

[94] In 1984, Congress amended § 1322(b)(1) allowing separate classification of codebtor claims as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"), H.R. 5174, 98th Cong. (1984).

[95] 3 B.R. 420 (Bankr. W.D. Ark. 1980).

[96] Sepinuck, *supra* note 63, at 353. *See also In re* Cook, 26 B.R. 187, 189 (D.N.M. 1982); *In re* Dziedzic, 9 B.R. 424, 426 (Bankr. S.D. Tex. 1981).

[97] Sepinuck, *supra* note 63, at 353.

[98] McCullough v. Brown (*In re* Brown), 162 B.R. 506 (N.D. Ill. 1993).

[99] *Id*. at 517–18.

[100] Sepinuck, *supra* note 63, at 354.

[101] *See, e.g., In re* Alicea, 199 B.R. 862, 866 (Bankr. D.N.J. 1996); Lawson v. Lackey (*In re* Lackey), 148 B.R. 626, 632 (Bankr. N.D. Ala. 1992); *In re* Lawson, 93 B.R. 979, 982 (Bankr. N.D. Ill. 1988); *In re* Furlow, 70 B.R. 973, 978 (Bankr. E.D. Pa. 1987).

[102] Sepinuck, *supra* note 63, at 360.

[103] *Id*.

[104] Courts advanced various bright-line tests so creditors would know when discrimination was unfair to avoid litigating every disparate treatment. *See In re* Chandler, 210 B.R. 898 (Bankr. D.N.H. 1997); *In re* Taylor, 137 B.R.

(continued...)

16.12.12 Engen Order Student Loan Special Class.wpd

Approach[106] have also attracted minority attention.  However, the Multifactor Approach is the most common method of examining unfair discrimination.[107]

The Multifactor Approach comprises factors initially developed in *Kovich*.[108]  In approving discriminatory Chapter 13 plans favoring a codebtor and a claim for back rent, the *Kovich* court held:

> Each case must be decided on its own merits. [1] Is there a reasonable basis for the classification? [2] Is the debtor able to perform a plan without the classification? [3] Has the debtor acted in good faith in the proposed classifications? . . . [4] Are they [the class being discriminated against] receiving a meaningful payment or is the plan just a sham?[109]

These judicially created factors do not originate in the Code, nor did *Kovich* explain their origin.[110]  While *Sutherland*[111] and *Iacovoni*[112] "attempt to read sections of the Code out of existence or ignore them completely,"[113] the Multifactor Approach "appear[s] to read sections *into* the Code."[114]  Nevertheless, subsequent decisions embraced similar factors because the Multifactor Approach provided a way to analyze unfair discrimination "somewhere between total whim and an Act of God."[115]  As courts applied the Multifactor Approach, it evolved into the following Four-Part Test:

> (1) whether the discrimination has a reasonable basis;
> (2) whether the debtor can carry out a plan without the discrimination;
> (3) whether the discrimination is proposed in good faith; and
> (4) whether the degree of discrimination is directly related to the basis or rationale

---

[104] (...continued)
60 (Bankr. W.D. Okla. 1992); *In re* Strickland, 181 B.R. 598 (Bankr. N.D. Ala. 1995); *In re* Colley, 260 B.R. 532 (Bankr. M.D. Fla. 2000).
[105] Courts apply tests based on the percentage of repayment of student loan debt and other unsecured debt to determine when unfair discrimination occurs. *See In re* Sullivan, 195 B.R. 649 (Bankr. W.D. Tex. 1996), *In re* Williams, 253 B.R. 220 (Bankr. W.D. Tenn. 2000).
[106] Courts allowed discrimination as fair if it rationally furthered an articulated, legitimate interest of the debtor. *See In re* Hamilton, 102 B.R. 498 (Bankr. W.D. Va. 1989), *In re* Lawson, 93 B.R. 979 (Bankr. N.D. Ill. 1988).
[107] Sepinuck, *supra* note 63, at 354.
[108] *In re* Kovich, 4 B.R. 403 (Bankr. W.D. Mich. 1980).
[109] *Id.* at 407 (bracketed numbers added).
[110] Sepinuck, *supra* note 63, at 355. *See also* McLaughlin, *supra* note 69, at 345.
[111] 3 B.R. 420.
[112] 2 B.R. 256.
[113] McLaughlin, *supra* note 69, at 344–45.
[114] *Id.* at 345 (emphasis in original).
[115] *In re* Hill, 4 B.R. 694, 698 (Bankr. D. Kan. 1980).

16.12.12 Engen Order Student Loan Special Class.wpd

for the discrimination.[116]

The Four-Part Test also elicited criticism with "wildly disparate results" because "the test relies upon abstract, undefined notions of reasonableness, legitimacy, and good faith."[117]  None of the tests are without detractors and all seem too inflexible to accommodate the diversity of cases that the Court considers.  A totality of the circumstances standard may be more appropriate.

The Tenth Circuit has not considered unfair discrimination under § 1322(b)(1).[118]  Bankruptcy courts in the Tenth Circuit have used the aforementioned Four-Part test from *Leser*[119] and *Wolff*,[120] along with the Baseline Test from *Bentley*.[121]  *Bentley* established the Baseline Test which looks at whether, despite the different treatment for each classification, the plan nevertheless offers each class benefits and burdens equivalent to those the class would receive under a Chapter 13 plan without separate classification.[122]  The Baseline Test considers the following principles:

> (1) equality of distribution;
> (2) nonpriority of student loans;
> (3) mandatory versus optional contributions; and
> (4) the debtor's fresh start.[123]

Several courts applying the aforementioned examinations have found the separate classification of student loan debt in Chapter 13 fair under § 1322(b)(1).[124]

---

[116] *In re* Thibodeau, 248 B.R. 699 (Bankr. D. Mass. 2000); *In re* Christophe, 151 B.R. 475 (Bankr. N.D. Ill. 1993); *In re* Chapman, 146 B.R. 411 (Bankr. N.D. Ill. 1992); *Matter of* Keel, 143 B.R. 915 (Bankr. D. Neb. 1992);(*In re* Labib-Kiyarash*, 271 B.R. 189 (B.A.P. 9th Cir. 2001); McDonald v. Sperna (*In re* Sperna), 173 B.R. 654 (B.A.P. 9th Cir. 1994); *In re* Bernal, 189 B.R. 507 (Bankr. S.D. Cal. 1995); *In re* Carlson, 276 B.R. 653 (Bankr. D. Mont. 2002); *In re* Tucker, 159 B.R. 325 (Bankr. D. Mont. 1993); *In re* Anderson, 173 B.R. 226 (Bankr. D. Colo. 1993); *In re* Pora, 353 B.R. 247 (Bankr. N.D. Cal. 2006); *In re* Webb, 370 B.R. 418 (Bankr. N.D. Ga. 2007); *In re* Brown, 500 B.R. 255 (Bankr. S.D. Ga. 2013); *In re* Leser, 939 F.2d 669 (8th Cir. 1991); *In re* Wolff, 22 B.R. 510, (B.A.P. 9th Cir. 1982).

[117] *In re* Bentley, 266 B.R. 229, 238 (B.A.P. 1st Cir. 2001) (internal quotations omitted).

[118] *In re* Knowles, 501 B.R. 409, 416 (Bankr. D. Kan. 2013); *In re* Mason, 300 B.R. 379, 383 n.9 (Bankr. D. Kan. 2003).

[119] 939 F.2d 669.

[120] 22 B.R. 510.

[121] 266 B.R. 229.

[122] *Knowles*, 501 B.R. at 415.

[123] *Bentley*, 266 B.R. at 240–43.

[124] *See In re* Brown, 500 B.R. 255 (Bankr. S.D. Ga. 2013) (debtor curing default complies with §1322(b)(1) when separate classification pays 78 percent of student loan debt and only 1 percent of unsecured debt); *Matter of* Pracht, 464 B.R. 486 (Bankr. M.D. Ga. 2012) (discriminatory classification favoring student loan that decreased general

(continued...)

16.12.12 Engen Order Student Loan Special Class.wpd

The various tests seem too inflexible to properly reflect the discretion that this Court has with respect to confirmation of a Chapter 13 plan that contains a separately classified creditor. Judge Posner acknowledged the difficulty of establishing a test for separate classification:

> We haven't been able to think of a good test ourselves. We conclude, at least provisionally, that this is one of those areas of the law in which it is not possible to do better than to instruct the first-line decision maker, the bankruptcy judge, to seek a result that is reasonable in light of the purposes of the relevant law, which in this case is Chapter 13 of the Bankruptcy Code; and to uphold his determination unless it is unreasonable (an abuse of discretion).[125]

Perhaps the various tests can function as a starting point for the Court's analysis, but none of the tests should stand as a rigid barrier to confirmation of the Debtor's plan. If such were the case, then the discretion of the bankruptcy court would be the unfortunate victim. Regardless, this Court shall embark on analysis of the Debtor's proposed separate classification employing the Bentley Baseline Test. The Court will then move on to a broader discussion of the separate classification that more accurately contemplates the facts of this case.

---

[124] (...continued)
unsecured recovery from 20 percent to 15 percent allowed to preserve debtor's participation in the Public Service Loan Forgiveness program); *In re* Kalfayan, 415 B.R. 907 (Bankr. S.D. Fla. 2009) (separate classification and more favorable treatment of long-term student loan debt over general unsecured creditors was not unfairly discriminatory, at least not when debtor's default would potentially jeopardize her professional license); *In re* Webb, 370 B.R. 418, 425–26 (Bankr. N.D. Ga. 2007) (confirming debtors' separate classification "because Debtors will suffer needless accrual of interest and penalties . . . and unsecured creditors will enjoy a disproportionally small benefit otherwise."); *In re* Cox, 186 B.R. 744 (Bankr. N.D. Fla. 1995) (while debtors' proposal to pay nondischargeable student loans outside their plan may be discriminatory, it is not unfair since such treatment is specifically allowed by § 1322(b)(5)); *In re* Willis, 189 B.R. 203, 205 (Bankr. N.D. Okla. 1995) (quoting *Lawson*, 93 B.R. at 984) ("discrimination is 'fair,' and therefore permissible, to the extent, and only to the extent, that is rationally furthers an articulated, legitimate interest of the debtor"); *In re* Tucker, 159 B.R. 325 (Bankr. D. Mont. 1993) (holding that a Chapter 13 plan providing a 29 percent payment to unsecured creditors and 100 percent to student loan creditors did not discriminate unfairly because the unsecured creditors would receive nothing if debtors' case were converted to a Chapter 7); *In re* Dodds, 140 B.R. 542, 543 (Bankr. D. Mont. 1992) (holding that the debtors' plan satisfied §§ 1322(b)(1) and (5) because treating student loan debt as a long-term obligation is one possibility of satisfying the confirmation standard against unfair discrimination); *Matter of* Foreman, 136 B.R. 532 (Bankr. S.D. Iowa 1992) (holding that a Chapter 13 plan's placement of student-loan debt in a separate class that provided for payment of that debt before other unsecured creditors did not unfairly discriminate against unsecured creditors because the plan provided for 100 percent of all unsecured claims and the student loan claims were nondischargeable); *In re* Boggan, 125 B.R. 533 (Bankr. N.D. Ill. 1991) (allowing a Chapter 13 plan to place student loans in a separate class and pay them 100 percent while only paying 15 percent to unsecured creditors as long as the unsecured creditors do not receive less than they would in a Chapter 7 liquidation); *In re* Freshley, 69 B.R. 96 (Bankr. N.D. Ga. 1987) (holding that Congressional intent encouraging the repayment of student loans is sufficient grounds for a debtor's separate classification of those debts in a Chapter 13 plan and that such classification does not unfairly discriminate against unsecured creditors).

[125] *In re* Crawford, 324 F.3d 539, 542 (7th Cir. 2003).

16.12.12 Engen Order Student Loan Special Class.wpd

**E.    APPLYING THE *BENTLEY* BASELINE TEST SHOWS DEBTORS' PROPOSED TREATMENT DOES NOT DISCRIMINATE UNFAIRLY.**

Bankruptcy courts in the District of Kansas apply the Baseline Test when considering § 1322(b) challenges to the separate classification of student loans.[126]  As a preliminary analysis or starting point, the Court will do so here.  As discussed below, the Court does not limit its analysis to the *Bentley* Baseline Test.

### 1.    Equality of Distribution

On its face, Debtors' Proposed Plan is discriminatory—that is the point of separate classification.  However, the Code permits fair discrimination.[127]  Here, while dividends on general unsecured claims are unknown, should a dividend occur during the Debtors' Chapter 13 commitment period, Debtors' Proposed Plan pays the Student Loan Claims without post-petition interest prior to other general unsecured claims.  Despite this distribution, Debtors' Proposed Plan is fair as Debtors' non-student loan unsecured creditors received a significant prepetition dividend that discriminated against the Student Loan Claims.

MMI applied Debtors' total voluntary payments to Debtors' prepetition non-student loan unsecured debt in the amount of $78,629.98.[128]  Non-student loan unsecured creditors were paid down $61,692.73—a prepetition dividend of 83 percent—to the detriment of the Student Loan Claims.  The difference between the total payments and the debt reduction is the accrual of additional interest and penalties during the repayment period of four years.  If the total payments to MMI had been made through a Chapter 13 plan, the non-student loan unsecured debt may have been paid in full because post-petition interest would not have accrued.  Even with interest and fees, Debtors would have at least $61,692.73 more general unsecured debt to pay through their Proposed Plan, if Debtors had not voluntarily reduced their prepetition debt through MMI.

---

[126]  *In re* Salazar, 543 B.R. 669, 673–76 (Bankr. D. Kan. 2015); *Knowles*, 501 B.R. at 416–18; *In re* Stull, 489 B.R. 217, 220–21 (Bankr. D. Kan. 2013); *Mason*, 300 B.R. at 386–87.
[127]  § 1322(b)(1). Sepinuck, *supra* note 63, at 341.
[128]  Doc. 41, at 4. This is the aggregate net payment after deduction of the administrative fee of $815.02. The total payments to MMI were $79,445.00.

16.12.12 Engen Order Student Loan Special Class.wpd

Had Debtors not so dramatically paid down non-student loan general unsecured debt, any potential future payments to that debt under Debtors' Proposed Plan would be substantially less on a pro-rata basis. Debtors' prepetition voluntary participation in MMI's DMP benefited unsecured creditors by decreasing the general unsecured claim amounts. The Court cannot ignore Debtors' prepetition actions.[129] Debtors' Plan properly proposes delaying or reducing potential distributions to non-student loan general unsecured creditors who in effect received a net prepetition 83 percent dividend at the expense of Debtors' Student Loan Claims and taxes. Debtors' proposed discrimination is permissible as the effect may equalize distributions between the Student Loan Claims and Debtors' prepetition unsecured debt. However, the Court does not solely hang its hat on Debtors' prepetition payments as other considerations warrant separate classification of Debtors' Student Loan Claims.

### 2. Nonpriority of Student Loans

This seems a rather curious factor since if student loan debt were a priority claim, then the Debtors' Plan would have to provide for payment in full of the debt; clearly § 1322(b)(1) contemplates separate classification of non-priority unsecured claims. The Student Loan Claims are not entitled to priority status under § 507(a). Additionally, Student Loan Claims are presumptively nondischargeable under the Code.[130] "The choice Congress made to impart student loan debt with nondischargeable status sends a strong signal of intent that should not be easily ignored."[131] Thus, Congress intended the Student Loan Claims to receive *favored* status.[132]

The *Bentley* court opined that:

---

[129] *In re* Nittler, 67 B.R. 217 (D. Kan. 1986) (bankruptcy court failed to adequately consider prepetition conduct).
[130] Absent a showing of undue hardship. *See* § 523(a)(8). *See also* § 1322(b)(1). Of course, the shadow of *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), looms over Chapter 13 plan confirmation and the binding effects of confirmation.
[131] *In re* Webb, 370 B.R. 418, 426 (Bankr. N.D. Ga. 2007).
[132] *In re* Knowles, 501 B.R. 409, 419 (Bankr. D. Kan 2013). *See also* Sepinuck, *supra* note 63, at 386 ("[T]he vast majority of courts have recognized that at least in some contexts a nonpriority claim may be favored in Chapter 13.").

16.12.12 Engen Order Student Loan Special Class.wpd

. . .nondischargeability is not, and does not entail, priority as to any distribution in or through bankruptcy; it merely permits the holder to continue to enforce the debt after bankruptcy . . . . Accordingly, as far as the Code is concerned, nothing in the nature of the claims at issue here warrants or justifies treating student loans more favorably than the others.[133]

This Court respectfully disagrees. The policy behind many nondischargeable claims is based on society's interest in preventing mischievous debtors from usurping prior bad acts—false pretenses or fraud,[134] embezzlement and larceny,[135] intentional torts,[136] criminal restitution,[137] tax debts,[138] and domestic support obligations.[139] These debts are logically nondischargeable as they were: (a) wrongfully incurred--such as those for fraud, embezzlement, restitution, and other wrongdoing; (b) to protect innocent children to ensure an orderly society—child support obligations; or (c) to provide for familial obligations such as alimony and division of debts and property. The rationale behind nondischargeability of these debt groups is either punitive in nature, or designed to curtail rewards for "certain socially undesirable behaviors."[140] Unlike most of these nondischargeable debts, "the policy behind the non-dischargeability of student loans is fundamentally different from the policies behind the Code's other non-dischargeability designations."[141] The Congress acknowledged the uniqueness that is student loan debt while drafting the Bankruptcy Reform Act of 1978.

[E]ducational loans are different from most loans. They are made without business considerations, without security, without cosigners, and relying for repayment solely on the debtor's future increased income resulting from the education. In this sense, the loan is viewed as a mortgage on the debtor's future. In addition, there have been abuses of the system by those seeking freedom from educational debts without ever attempting to repay.[142]

---

[133] 266 B.R. at 241.
[134] § 523(a)(2).
[135] § 523(a)(4).
[136] § 523(a)(6).
[137] § 523(a)(13).
[138] § 523(a)(1).
[139] § 523(a)(5).
[140] DEANNE LOONIN & PERSIS S. YU, ET AL., STUDENT LOAN LAW § 11.9.3, at 234 (National Consumer Law Center, 5th ed. 2015, updated at http://www.nclc.org).
[141] *Id.*
[142] H.R. Rep. No. 95-595, 95th Cong., 2d Sess. 133, *reprinted* in 1978 U.S. Code Cong. & Ad. News 5963, 6094.

- 22 -

16.12.12 Engen Order Student Loan Special Class.wpd

Among § 523(a)'s nondischargeable debts, student loans stand alone as the only debt "incurred for a supposedly socially beneficial purpose."[143] If repayment of the loans relies upon Debtors' future income, then a Chapter 13 plan seems an appropriate means to accomplish this task.

Debtors with student loan obligations face a quagmire. Without separate classification, debtors may face a higher debt burden after bankruptcy than before. This Court respectfully disagrees with other courts' holdings that without more, nondischargeability of student loans is an insufficient reason for discriminating in favor of Student Loan Claims.[144] This Court is not alone on this position.[145] Regardless, this Court does not limit its rationale to the singular factor of nondischargeability.

Sustaining the Trustee's objections would result in a smaller potential dividend to the Student Loan Claims. Debtors' Student Loan Claims will increase during the pendency of their five-year Proposed Plan as nondischargeable interest accumulates.[146] Thus, a large portion of nondischargeable debt would remain after Debtors complete their Proposed Plan, because Debtors' Student Loan Claims comprise 71 percent of their total unsecured debt. Debtors may owe more on their Student Loan Claims after completing their Proposed Plan and may owe more debt than before filing.[147] This hardly seems a result the Congress intended. Student loans are nondischargeable because the "Congress wishes to protect the government's fiscal health as a guarantor (or lender) of these loans."[148] Allowing Debtors to treat their Student Loan Claims favorably ahead of other general unsecured creditors furthers Congressional intent and protects

---

[143] Roger Roots, *The Student Loan Crisis: A Lesson In Unintended Consequences*, 29 SW. U. L. REV. 501, 513 (2000).
[144] *See In re* Simmons, 288 B.R. 737 (Bankr. N.D. Tex. 2003).
[145] *In re* Webb, 370 B.R. 418 (Bankr. N.D. Ga. 2007).
[146] AUSTIN AND HAUSER, *supra* note 74.
[147] *In re* Knowles, 501 B.R. 409, 419 (Bankr. D. Kan. 2013) (acknowledging that the nondischargeability rule combined with the nondiscrimination rule may result in debtors "owing more on their student loans after completion of their plan than before filing for Chapter 13 relief because of accumulation of equally nondischargeable interest that will accrue."); *In re* Salazar, 543 B.R. 669, 670 (Bankr. D. Kan. 2015) (noting that "[b]ecause interest on nondischargeable debts continues to accrue while a debtor is performing under a Chapter 13 plan but cannot be paid unless the debtor is paying all the unsecured claims in full, a debtor with student loan debts runs a very real risk of paying into a plan for three to five years only to find that she finishes her plan owing more on those debts than she did when she filed bankruptcy.").
[148] *Knowles*, 501 B.R. at 418.

16.12.12 Engen Order Student Loan Special Class.wpd

the government's and the student loan program's fiscal health.[149]

Some courts that deny separate classification rely on the negative inference that "Congress has not granted student loan claims a priority in the bankruptcy distribution scheme, but it did bestow such status on support claims."[150] This Court respectfully disagrees. This reasoning could render the separate classification provision superfluous if it were so construed, a disfavored outcome.[151] As discussed below, this erroneous interpretation ignores case law that approved separate classification of familial support before that obligation was awarded priority status. Just because student loans are not entitled to priority under § 507(a) does not preclude debtors from separately classifying them with more favorable treatment under § 1322(b)(1). There are many reasons why Congress may have excluded student loans from § 507(a)'s priority treatment. First, granting student loans priority status may disqualify many debtors from Chapter 13 relief as § 1322(a)(2) requires full payment of § 507(a) priority claims. "[I]t would be impossible for many debtors with outstanding student loans to pay them all off during a three-year or five-year plan."[152] Unlike other § 507(a) priorities, many student loans are not incurred based on the debtor's ability to pay.[153] "Support obligations are created under judicial auspices after taking into account the debtor's income and expenses. Income taxes necessarily represent a

---

[149] Over the ten-year period from 2015 to 2024, the Congressional Budget Office projects a net gain (profit) of roughly $135 billion from the Department of Education's student loan program based on the procedures currently used in the federal budget as prescribed by the Federal Credit Reform Act of 1990 (FCRA). Although, critics note a loss of $88 billion is projected using a fair-value approach. *See Fair-Value Estimates of the Costs of Selected Federal Credit Programs for 2015 to 2024,* CONGRESSIONAL BUDGET OFFICE, *available at* https://www.cbo.gov/publication/45383.

[150] *See* Sepinuck, *supra* note 63, at 385.

[151] Geiger v. Kawaauhau, 523 U.S. 57, 62 (1998).

[152] Sepinuck, *supra* note 63, at 385.

[153] Santa Fe Med. Svcs., Inc. v. Segal (*In re* Segal), 57 F.3d 342, 348 (3d Cir. 1995) (noting that student loans "are not based upon a borrower's proven credit-worthiness"). There are few underwriting requirements for government-backed student loans. "The Stafford, Perkins and PLUS loans do not depend on your credit score. The Stafford and Perkins loans are available entirely without regard to your credit history. The PLUS loan, however, requires that the borrower not have an *adverse credit history.* An adverse credit history is defined as being more than 90 days late on any debt or having any Title IV debt within the past five years subjected to default determination, bankruptcy discharge, foreclosure, repossession, tax lien, wage garnishment, or write-off." *See How do Federal Student Loans Use Credit,* THE SMART STUDENT GUIDE TO FINANCIAL AID, FINAID (2016), http://www.finaid.org/loans/creditscores.phtml (italics in original).

16.12.12 Engen Order Student Loan Special Class.wpd

fraction of income."[154]  Some debtors carry large support and tax debts, "but such should not be

the norm."[155]  However, in this Court's experience, increasingly large and problematic student

loan debt is increasing.  Additionally, "student loans . . . are usually incurred without regard to

the debtor's current budget and may well prove to be beyond the debtor's short-term budget once

the education is over."[156]  A blanket grant on priority status precluding debtors from qualifying

for Chapter 13 relief runs afoul of "Congress's preference that individual debtors use Chapter 13

instead of Chapter 7."[157]  Notably, prior to the Code's 1994 amendments, "most courts permitted

favored treatment of support claims before they were accorded priority."[158]  Equally, the Code

does not disallow separately classifying student loan claims even though they are not priority.[159]

The Code and public policy also allow separate classification of § 523(a)(15) obligations even

though non-support familial obligations are dischargeable under 1328(a).[160]

### 3.  Mandatory Versus Optional Contributions

Generally, this factor examines a debtor's disposable income under the means test.  The

result of this test sets the mandatory contributions an above median income debtor must make to

a Chapter 13 plan.  Courts have looked favorably on debtors contributing additional funds to

separate classification creditors in excess of what the means test requires.[161]  Here, Debtors are

not offering anything in addition to what is mandatorily required.  However, Debtors voluntarily

contributed $79,445 in prepetition funds to reduce their non-student loan general unsecured debt

---

[154] Sepinuck, *supra* note 63, at 385 n.241. Some courts allowed the separate classification of domestic support claimants before BAPCPA defined domestic support obligations under § 101(14A) and granted them priority status under § 507(a)(1). 198 A.L.R. Fed. 605 (originally published in 2004).

[155] Sepinuck, *supra* note 63, at 385 n.241.

[156] *Id*. at 385–86 n.241. They are usually incurred by young college students who are not at the pinnacle of their financial acumen, or by parents who are desperate to support their children's aspirations for higher education.

[157] *In re* Bateman, 515 F.3d 272, 279 (4th Cir. 2008) (quoting McDonald v. Master Financial (*In re* McDonald), 205 F.3d 606, 614 (3d Cir. 2000) (internal quotations omitted)). *See also In re* Jackson, 2006 Bankr. LEXIS 4327, at *3 (Bankr. N.D. Ga. Mar. 16, 2006).

[158] Sepinuck, *supra* note 63, at 386.

[159] *Id*.

[160] HENRY J. SOMMER & MARGARET DEE MCGARITY, COLLIER FAMILY LAW AND THE BANKRUPTCY CODE ¶ 8.07[3], at 8-65 (2016).

[161] *See In re* Stull, 489 B.R. 217, 224 (Bankr. D. Kan. 2013) (plan does not unfairly discriminate by allowing debtor to pay his student loan claim from funds he receives in excess of his projected disposable income); *In re* Knowles, 501 B.R. 409, 419–20 (Bankr. D. Kan. 2013) (Debtors' discretionary income above their Code-computed projected disposable income can be voluntarily contributed to payment of student loans).

16.12.12 Engen Order Student Loan Special Class.wpd

balance, after interest and fees, by 83 percent.  Therefore, the third factor of the Baseline Test is neutral as applied to the Debtors and afforded little weight.

### 4. The Debtor's Fresh Start

A fundamental goal of the Code is allowing an honest, but unfortunate debtor a fresh start.[162]  The Code is comprised of statutes of equity, and the "bankruptcy court is a court of equity and should invoke equitable principles and doctrines, refusing to do so only where their application would be 'inconsistent' with the Bankruptcy Code."[163]  The fresh start is not absolute,[164] and bankruptcy courts must provide fair treatment to creditors.  Congress intended more debtors to seek relief under Chapter 13 instead of Chapter 7.[165]  Debtors not permitted to favor student loans in Chapter 13 risk not receiving a fresh start and may elect conversion to Chapter 7 in which unsecured creditors typically receive little to nothing.

Debtors have a legitimate interest in reducing the burden of their nondischargeable Student Loan Claims through their Proposed Plan.[166]  "The amendment making such [student] loans nondischargeable in chapter 13 cases came as part of a federal budget balancing package, which suggests that its purpose was to serve a societal interest in maximizing the payments on such [student] loans."[167]  Further, "the Code specifically permits debtors to cure defaults and maintain payments on long-term debts on which the final payment is due after the final payment of the plan, [and] a number of courts have permitted debtors to separately classify student loan debts for the purpose of providing them that specified treatment in a plan."[168]

*Bentley* stated that nondischargeability "*merely* permits the holder to continue to enforce the debt after bankruptcy."[169]  In this context, use of the word *merely* is misplaced because a full

---

162  Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007).
163  *In re* Beaty, 306 F.3d 914, 922 (9th Cir. 2002) (citing *In re* Myrvang, 232 F.3d 1116, 1124 (9th Cir. 2000)).
164  Grogan v. Garner, 498 U.S. 279, 286–87 (1991).
165  *In re* Bateman, 515 F.3d 272, 279 (4th Cir. 2008).
166  8 COLLIER ON BANKRUPTCY, *supra* note 72, ¶ 1322.05[2][a], at 1322-20.
167  *Id.* (Footnote omitted.) *See also* Omnibus Budget Reconciliation Act of 1990, Pub. L. No. 101-508 (1990).
168  8 COLLIER ON BANKRUPTCY, *supra* note 72, ¶ 1322.05[2][a], at 1322-20.
169  *Bentley*, 266 B.R. at 241 (emphasis added).

16.12.12 Engen Order Student Loan Special Class.wpd

compliance discharge is one of the most important aspects of the Debtors' bankruptcy. A discharge benefits not only the debtor and his family, but imparts a benefit to the economy and society as a whole. A student loan's nondischargeability, coupled with the government's collection powers, tips the scales in favor of separate classification.

Here, Debtors' Student Loan Claims are long-term debts under § 1322(b)(5),[170] and account for over 71 percent of their total unsecured debt. Debtors incurred substantial burdens by voluntarily discriminating in favor of their other unsecured creditors prepetition. They fell into default on nondischargeable tax obligations and their mortgage note. Debtors are properly employing Code provisions permitting separate classification of their Student Loan Claims. Separately classifying Debtors' Student Loan Claims is permitted if Congress intended § 1322(b)(1) to have any meaning, and if not student loans, then what debt? We allow separate classification of other creditors "with a special relationship to the debtor or with claims of a special nature. Courts have sometimes approved more favored treatment for doctors, landlords, trade creditors necessary for continued operation of a business, attorneys, and even banks from which future credit is needed"[171]

## F. THE STUDENT LOAN COLOSSUS OR HOW STUDENT LOANS ARE SIGNIFICANTLY DIFFERENT FROM OTHER GENERAL UNSECURED DEBT

> The industry warnings are urgent and often dire: The housing market could stall. Marriages are being postponed. Workers won't have the savings to retire. The nation's food supply will be disrupted.
> They point to one threat: soaring student debt.
> A tripling of student debt over the past decade to more than $1.3 trillion has unleashed a torrent of Washington lobbying from outside the education sector, with various industries depicting a "crisis" they say requires federal intervention.[172]

---

[170] *In re* Jackson, 2006 Bankr. LEXIS 4327, at *10 (Bankr. N.D. Ga. Mar. 16, 2006).
[171] HENRY J. SOMMER, ET AL., CONSUMER BANKRUPTCY LAW AND PRACTICE § 12.4.3 at 339 (National Consumer Law Center, 11th ed. 2016) (citing *In re* Hill, 4 B.R. 694 (Bankr. D. Kan. 1980) (physicians, dentists, lawyers); *In re* Kovich, 4. B.R. 403 (Bankr. W.D. Mich. 1980) (landlord); *In re* Sutherland, 3 B.R. 420 (Bankr. W.D. Ark. 1980) (trade creditors, medical debts, banks)).
[172] Josh Mitchell, *Groups Push for Debt Relief–Farmers, real-estate agents and other say student-loan level threaten industries*, WALL STREET JOURNAL, Sept. 14, 2016, at A3.

16.12.12 Engen Order Student Loan Special Class.wpd

The U.S. government over the last 15 years made a trillion-dollar investment to improve the nation's workforce, productivity and economy. A big portion of that investment has now turned toxic, with echoes of the housing crisis.[173]

Much has changed in the 15 years since the *Bentley* Baseline test was adopted, and it is appropriate to look beyond the confines of that test. Student loans are unique and should be separately classified as the Code permits. Debtors' circumstances are such that separate classification and favorable discrimination of their Student Loan Claims are permissible under § 1322(b)(1). Both the text and purpose of the Code point to this conclusion.

Student loans are different because unlike other nondischargeable debts, it is not the debtor's misconduct in acquiring the loans that supports nondischargeability.[174] Although acquiring an education without intending to pay for it is wrongful, "any such 'wrongdoing' is a function of the discharge itself, it was not what created the debt."[175] Further, the Code's fraud[176] and good faith provisions,[177] combined with the Chapter 13 trustee's powers, are intended to flush out such misdeeds.[178] Thus, the idea that student loans are nondischargeable to avoid fraud and a free ride is inaccurate. The Code already contains ample provisions to address fraud and debtors are allowed to keep other services or property acquired on unsecured credit. Further, as discussed *supra*,[179] student loans are unlike other types of § 523(a) debt where the dischargeability rationale is based on society's interest in preventing mischievous debtors from usurping prior bad acts.

Student loans are also different because Congress has an interest in protecting the fiscal

---

[173] Josh Mitchell, *THE OUTLOOK: College Loan Glut Turns Sour*, WALL STREET JOURNAL, June 6, 2016, at A2.
[174] *See supra* Analysis subpart C.
[175] Sepinuck, *supra* note 63, at 381.
[176] § 523(a)(2).
[177] *See* §§ 1325(a)(3) and (a)(7). Debtors must propose plans and file petitions in good faith.
[178] It has been suggested that bankruptcy courts have a duty to review chapter 13 bankruptcy plans. *See* United Student Aid Funds, Inc., v. Espinosa, 559 U.S. 260, 276–77 (2010) ("the Code makes plain that bankruptcy courts have the authority—indeed, the obligation—to direct a debtor to conform his plan to the requirements of §§ 1328(a)(2) and 523(a)(8)).
[179] Analysis.C.2.

- 28 -

16.12.12 Engen Order Student Loan Special Class.wpd

health of the federal student loan program.[180]  In furtherance of this goal, the government has

enormous collection powers on federal student loans.  The government may:

> garnish a borrower's wages without judgment, seize the borrower's tax refund
> (even an earned income tax credit), seize portions of federal benefits such a
> Social Security, and deny the borrower eligibility for new education grants or
> loans . . . and charge fees that often create ballooning balances. . . .[181]

Under § 1095a of the Higher Education Act, holders of defaulted student loans may

garnish up to ten percent of the debtor's disposable income.[182]  Further, the ten percent limit

applies to a single garnishment by an individual note holder, not the cumulative maximum limit

on a debtor's disposable income.[183]  While the Consumer Credit Protection Act provides a

cumulative limit of 25 percent on multiple garnishments,[184] practicality may limit cooperation

between multiple claim holders without the debtor's intervention.  Additionally, the government

may reach further than private lenders by setting off tax refunds, Social Security, and other

government benefits. Student loan debts have been subject to pernicious scams and collection

efforts.[185]

Further, "[u]nlike any other type of debt, there is *no statute of limitations*.  The

government can pursue borrowers to the grave."[186]  Congress stated that "[i]t is the purpose of

this subsection to ensure that obligations to repay loans . . . are enforced without regard to any

Federal or State statutory, regulatory, or administrative limitation on the period within which

debts may be enforced."[187]  Conversely, the Internal Revenue Service generally may only pursue

---

[180]  Santa Fe Med. Svcs., Inc. (*In re* Segal), 57 F.3d 342, 348 (3rd Cir. 1995).  *See also* Sepinuck, *supra* note 63, at 382.
[181]  *Supra* note 131, § 6.1.3.1, at 74.
[182]  20 U.S.C. § 1095a.
[183]  Halperin v. Reg'l Adjustment Bureau, Inc., 206 F.3d 1063 (11th Cir. 2000).
[184]  15 U.S.C. § 1673.
[185]  Michael J. Bologna, *CFPB, Ags Confront Student Debt-Relief Scams*, BNA's BANKRUPTCY LAW REPORTER (March 24, 2016), http://www.bna.com/cfpb-ags-confront-n57982068778/.
[186]  *Supra* note 131, § 6.1.3.1, at 75 (emphasis added). The Higher Education Technical Amendments of 1991 (HETA) eliminated all statutes of limitations on actions to recover on defaulted federally guaranteed student loans. *See also* 20 U.S.C. § 1091a.
[187]  20 U.S.C. § 1091a.

16.12.12 Engen Order Student Loan Special Class.wpd

collection on assessed taxes "within 10 years after the assessment of the tax."[188]  Demanding student loan repayment helps assure the fiscal integrity of the federal student loan program as taxpayers are left on the hook when debtors default.  "Thus, to the extent that courts regard efforts to favor student loans as focusing 'solely on the interests of the debtor,' and the debtor's fresh start they miss the point."[189]  Separate classification and favored treatment of student loans furthers the congressional goal of protecting the federal student loan program.

Originally, the federal student loans were "intended as a program of last resort for college students seeking to finance their educations."[190]  Now, "[n]o longer can the average student from the lower middle classes hope to enter and exit a postsecondary institution with a valuable degree without, to some extent, participating in the guaranteed student loan program."[191]  The increasing student loan burden has far reaching implications from recent graduates to the elderly. For many recent graduates it delays marriage,[192] defers car purchases,[193] postpones home ownership,[194] inhibits saving for retirement,[195] and even hinders dating after college.[196] "[S]everal studies show that debt is also associated with significant mental and physical health problems, particularly in young people."[197]  One study "linked debt to high blood pressure as

---

[188]  26 U.S.C. § 6502(a)(1).
[189]  Sepinuck, *supra* note 63, at 383 (footnote omitted).
[190]  Roots, *supra* note 143, at 504.
[191]  *Id*. at 523.
[192]  Rebecca Ungarino, *Burdened with Record Amount of Debt, Graduates Delay Marriage* (Oct. 7, 2014), http://www.nbcnews.com/business/personal-finance/burdened-record-amount-debt-graduates-delay-marriage-n219371.
[193]  Halah Touryalai, *Backlash: Student Loan Burden Prevents Borrowers From Buying Homes, Cars* (June 26, 2013), http://www.forbes.com/sites/halahtouryalai/2013/06/26/backlash-student-loans-keep-borrowers-from-buying-homes-cars/#6d8275a477c5.
[194]  *Id*. Bob Bryan, *Young Americans have gone from being home owners to student debt holders*, (Dec. 1, 2015), http://www.businessinsider.com/student-debt-prevents-house-buying-2015-11.
[195]  American Student Assistance, *Retirement Delayed: The Impact of Student Debt on the Daily Lives of Older Americans*, at 3 (2015), http://www.asa.org/site/assets/files/3680/retirement_delayed.pdf.
[196]  Karen Farkas, *Student loan debt is viewed as 'baggage' in relationships, survey shows*, CLEVELAND.COM (August 9, 2016 at 10:20 a.m.), http://www.cleveland.com/metro/index.ssf/2016/08/student_loan_debt_is_viewed_as.html.; Nicole Audrey, *Student Debt Puts a Damper on Dating After College*, NBCNEWS.COM (August 7, 2016 at 2:25 p.m. ET, http://www.nbcnews.com/feature/college-game-plan/student-debt-puts-damper-dating-after-college-n623871.
[197]  Abby Abrams, How Student Loan Debt Hurts Your Health (June 11, 2014), http://time.com/2854384/student-loan-debt-health/.

16.12.12 Engen Order Student Loan Special Class.wpd

well as poor self-reported mental and general health."[198]  These stressors are not isolated on the

debtor as their reach negatively impacts a debtor's family.  Graduates saddled with high student

loan debt are less likely to serve the public as they seek out high-income post-graduation

employment opportunities.[199]  "Those pursuing careers in securities or licensed professionals,

such as attorneys and accountants, may face difficulties with licensing boards who can and do

regard financial insolvency as a valid reason for the refusal to grant a license to work in a chosen

profession."[200]  For the elderly, student debt is becoming a growing concern as those 65 and

older in 2013 had outstanding education loans of $18.2 billion compared with $2.8 billion in

2005.[201]  For Americans age 65–74, 27 percent of student loans were in default; for those age 75

and older more than half of student loans were in default.[202]  The elderly are particularly at risk

because the government may garnish Social Security payments.[203] Borrowers of all ages are also

subject to abusive collection practices as evidenced by the Consumer Financial Protection

Bureau's acknowledgement to "clean up the student loan servicing market."[204] Separate

classification is the right answer for student loan debt as "Chapter 13 protection increases annual

earnings by $5,562, decreases five-year mortality by 1.2 percentage points, and decreases five-

year foreclosure rates by 19.1 percentage points."[205]

As of June 30, 2016, outstanding student loan debt reached $1.259 trillion and comprised

ten percent of household debt—ahead of credit card debt at six percent and automobile debt at

---

[198]  *Id*.
[199]  Roots, *supra* note 143, at 522.
[200]  *Id*. at 519.
[201]  Natalie Kitroeff, *Student Debt May Be the Next Crisis Facing Elderly Americans* (Dec. 18, 2015),
http://www.bloomberg.com/news/articles/2015-12-18/student-debt-may-be-the-next-crisis-facing-elderly-americans.
[202]  *Id*.
[203]  *Id*.
[204]  Maggie McGrath, *Discover Slammed By CFPB For Illegal Student Loan Servicing Practices* (July 22, 2015),
http://www.forbes.com/sites/maggiemcgrath/2015/07/22/discover-slammed-by-cfpb-for-illegal-student-loan-
servicing-practices/#52662dcdc17c.
[205]  Will Dobbie & Jae Song, *Debt Relief and Debtor Outcomes: Measuring the Effects of Consumer Bankruptcy
Protection*, 105(3) AMERICAN ECONOMIC REVIEW 1272 (2015).

16.12.12 Engen Order Student Loan Special Class.wpd

nine percent.[206]  To place this aggregate student loan balance in perspective, it exceeds the

annual gross domestic product of all but the 11 largest economies in the world, including the

economies of Russia, Spain and Mexico.[207]  "Student loans are by far the fastest growing

component of non-housing consumer debt."[208]  Student loans ranked first in the percent of

balances that were more than 90 days delinquent—ahead of credit cards, mortgages, auto loans,

and home equity lines of credit.[209]  Many student loan borrowers now "shoulder educational debt

loads that were unimaginable to their parents' generation."[210]  Notably, "borrowers with the

smallest debts are most likely to default," indicating that borrowers who run up six figure debts

are not the source of trouble.[211]  This predicament "now threatens the nation's economic

growth"[212] and potentially widens the wealth and income disparity.  The massive shift of the

skyrocketing costs of college education to the middle class over the last three decades has

replaced the decreased government subsidization of public colleges and universities. It is

accurate to classify student loan debt as singular in identity since borrowers are in effect

compensating for the reduced tax revenue allocated to post-secondary education.  Adjusted for

inflation, the cost to attend a four-year public university has increased 331% since 1983.[213]  This

societal tax burden has created what is in effect individual taxation to the public university

attendee, much of which is funded by student loan borrowing.

      In 2007, Congress attempted to alleviate student debt stress by introducing the income-

---

[206]  Federal Reserve Bank of New York, *Quarterly Report on Household Debt and Credit*, August 2016, available at: https://www.newyorkfed.org/medialibrary/interactives/householdcredit/data/pdf/HHDC_2016Q2.pdf.
[207]  Statistics Times, *Projected GDP Ranking (2015-2020)*, http://statisticstimes.com/economy/projected-world-gdp-ranking.php  (last visited Nov. 23, 2016).
[208]  Austin, *supra* note 51, at 577.
[209]  Federal Reserve Bank of New York, *Quarterly Report on Household Debt and Credit*, August 2016, available at: https://www.newyorkfed.org/medialibrary/interactives/householdcredit/data/pdf/HHDC_2016Q2.pdf.
[210]  Roots, *supra* note 143, at 502.
[211]  Susan Dynarski, *Why Students With Smallest Debts Have the Larger Problem* (Aug. 31, 2015), http://www.nytimes.com/2015/09/01/upshot/why-students-with-smallest-debts-need-the-greatest-help html?_r=0.
[212]  Jim Puzzanghera, *Soaring student loan debt poses risk to nation's future economic growth* (Sept. 5, 2015), http://www.latimes.com/business/la-fi-student-debt-20150906-story html.
[213]  College Board 2013, trends in college pricing 2013.

16.12.12 Engen Order Student Loan Special Class.wpd

based-repayment plan.[214]  The income-based-repayment plan allows borrowers to make reduced loan payments based on a percentage of income regardless of the borrower's chosen occupation.[215]  The outstanding balance is then forgiven after 20-25 years of timely payments.[216]  Importantly, unlike other government sponsored forgiveness programs,[217] the forgiven debt is considered taxable income under the Internal Revenue Code.[218]  Borrowers with forgiven debt under the income-based-repayment plan may easily face enormous tax burdens.[219]  "Thus the debtor is asked to exchange one non-dischargeable debt, a student loan debt, for another non-dischargeable debt, a tax debt, which is not much progress towards the fresh start envisioned by the Bankruptcy Code."[220]  For many borrowers, and especially parent Direct PLUS borrowers, this tax burden occurs at or near retirement—one of the worst possible times.  Additionally, this tax bill is due in full immediately as the Internal Revenue Service does not have an income-based-repayment plan.[221]  Here, Debtors do not even have the option to participate in an income-based-repayment plan on the Navient debt as "[t]he only federal student loans clearly not eligible for the [income-based-repayment] plan are those loans made to the parents of students under the PLUS program."[222]  The public service loan forgiveness program allows the tax free forgiveness

---

[214] 20 U.S.C. § 1098(e).

[215] *See* Jonathan M. Layman, *Forgiven But Not Forgotten: Taxation of Forgiven Student Loans Under the Income-Based-Repayment Plan*, 39 CAP. U. L. REV. 131, 151–52 (2011).

[216] *Id.* at 151–52.

[217] 20 U.S.C. § 1078. *See* Layman, *supra* note 215, at 137–38.

[218] I.R.C. § 108(f)(3). Demmons v. R3 Educ. Inc. (*In re* Demmons), 2016 WL 5874831, at *9 n.47 (Bankr. E.D. La. Oct. 7, 2016). *See also* Layman, *supra* note 215, at 147 (noting that with the exception of those instances specifically exempted from taxation, canceled student loans are subject to taxation as cancellation of indebtedness income). *See also* Ron Lieber, *For Student Borrowers, Relief Now May Mean a Big Tax Bill Later* (Dec. 14, 2012), http://www.nytimes.com/2012/12/15/your-money/for-student-borrowers-a-tax-time-bomb.html?_r=0; Andrew Thompson, *Ex-students with 'Income-Based' Loan Payments Face Huge Tax Bill* (Feb. 15, 2016), http://www.nbcnews.com/business/personal-finance/ex-students-income-based-loan-payments-face-crushing-tax-bill-n517566.

[219] Layman, *supra* note 215, at 147; Ron Lieber, *For Student Borrowers, Relief Now May Mean a Big Tax Bill Later* (Dec. 14, 2012), http://www.nytimes.com/2012/12/15/your-money/for-student-borrowers-a-tax-bomb html?_r=0; Andrew Thompson, *Ex-students with 'income-based' loan payments face huge tax bill* (Feb. 15, 2016), http://www.nbcnews.com/business/personal-finance/ex-students-income-based-loan-payments-face-crushing-tax-bill-n517566.

[220] Demmons v. R3 Educ. Inc. (*In re* Demmons), 2016 WL 5874831, at *9 note 47 (Bankr. E.D. La. Oct. 7, 2016).

[221] Ron Lieber, *For Student Borrowers, Relief Now May Mean a Big Tax Bill Later* (Dec. 14, 2012), http://www.nytimes.com/2012/12/15/your-money/for-student-borrowers-a-tax-time-bomb.html?_r=0.

[222] Layman, *supra* note 215, at 152. *See also* 34 C.F.R. § 682.215(a)(2). *See supra* note 17.

- 33 -

16.12.12 Engen Order Student Loan Special Class.wpd

of unpaid student loan balances after the borrower has paid for 120 months. The purpose of the program is to encourage graduates to work in modestly paid positions in the public sector. The irony is that perhaps the greatest beneficiaries of this student loan forgiveness program will be physicians; it is estimated that each participant will discharge $131,000 in student loan debt under the program.[223] What's more, "[b]illons of dollars worth of bonds backed by student loans could soon face downgrades as bond ratings agencies react to borrowers revising their repayment plans."[224] "Should these bonds default, the federal government and ultimately the U.S. taxpayers could be stuck with billions of dollars in bad loans."[225] The recent projections of surpluses for student loan programs have melted away,[226] intensifying the need for borrowers to repay the loans as they are able–such as the Debtors propose in their plan.

At the end of the day, behind the numbers in a consumer bankruptcy case are individuals who are profoundly affected by financial circumstances, as well as their families, employers, and society. There seems little question that as a general rule, and certainly in the Debtors' case, separate classification of student loans for preferred treatment is proper, reasonable, and fair discrimination. The benefits to the Debtors, to the student loan creditors, to the taxpayers, and to other interests bring home this conclusion. Of course, a blanket rule that allows separate classification of student loans does not work because confirmation is determined on a case-by-case basis and is ultimately a matter for the Court's discretion.

Notably, the United States Constitution provides that Congress shall establish uniform

---

[223] Josh Mitchell, *Government on Track to Forgive Up to $131,000 Each in Student Debt for Thousands of Doctors*, THE WALL STREET JOURNAL (July 20, 2016, 10:45 a.m. ET), http://blogs.wsj.com/economics/2016/07/20/government-on-track-to-forgive-up-to-131000-in-student-debt-for-thousands-of-doctors/ (last visited Aug. 8, 2016).

[224] Charles Bovaird, *Bonds Based On Student Loans Face Downgrades* (JPM, NAVI) (Oct. 20, 2016) (quoting Mark Heppenstall, chief investment officer of Penn Mutual Asset), http://www.investopedia.com/news/bonds-based-student-loans-face-downgrades-jpm-navi/.

[225] *Id*.

[226] Josh Mitchell, *U.S. to Forgive at Least $108 Billion in Student Debt in Coming Years*, THE WALL STREET JOURNAL (Nov. 30, 2016) http://www.wsj.com/articles/u-s-to-forgive-at-least-108-billion-in-student-debt-in-coming-years-1480501802

16.12.12 Engen Order Student Loan Special Class.wpd

laws on the subject of bankruptcies.[227]  John Adams, who signed into law the first Federal

Bankruptcy Act in 1800, considered bankruptcy and debt a major issue as our citizens were

losing farms and going to debtors' prisons.  Nondischargeable student loans may create a virtual

debtors' prison, one without physical containment, but assuredly a prison of emotional

confinement.

Student loans serve a valuable purpose beyond mere consumerism.  They allow

individuals the opportunity to obtain an education, an education that will hopefully allow student

loan recipients to contribute to a prosperous society, an education that unfortunately is becoming

harder to achieve without the assistance of government-backed student loans.  At the same time,

it is understandable that the Congress demands repayment.  The Code generally prevents debtors

from discharging their student loans and leaving taxpayers with the bill.  Student loan creditors

deserve separate classification in bankruptcy because the taxpayer-funded student loan system is

critical to society's future welfare.  It is one thing to not allow delinquent debtors an escape

hatch from their student loans, but it is quite another to forbid debtors with limited resources

from favoring a taxpayer backed nondischargeable obligation incurred for society's benefit.  If

bankruptcy is, in part, the art of compromise, then Debtors' Proposed Plan that fairly

discriminates in favor of the Student Loan Claims is a permissible compromise under

§ 1322(b)(1).

It is this Court's experience that many consumer bankruptcies are filed by desperate

individuals, who are financially, emotionally and physically exhausted.  Sometimes lost in the

discussion that the bankruptcy discharge provides a fresh start to honest but unfortunate debtors

is that, perhaps as importantly, it provides a commensurate benefit to society and the economy:

People are freed from emotional and financial burdens to become more energetic, healthy

participants.  Of course, this beneficial effect is properly curtailed by the existence of debts that

---

[227]  U.S. CONST. art. I, § 9.

16.12.12 Engen Order Student Loan Special Class.wpd

are excepted from discharge. Here, the Debtors do not seek to escape their liability for the Student Loan Claims, but to the contrary, they seek to pay them.

## CONCLUSIONS OF LAW

The Trustee's position is that separately classifying the Student Loan Claims for favorable payment is unfairly discriminatory. The Code permits fair discrimination. The Court overrules the Trustee's objection. The Debtors' Plan properly provides for the separate classification of substantially similar student loan debt and does not discriminate unfairly in compliance with § 1322(b)(1).

**IT IS ORDERED** that the Trustee's objection to confirmation of Debtors' Chapter 13 Plan is **OVERRULED**.

**IT IS SO ORDERED.**

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

16.12.12 Engen Order Student Loan Special Class.wpd