ENGEN, Case No. 1 - 20184
Doc. 75, n 201
As viewed on 12/15/2016
Photographer: Getty Images

# Student Debt May Be the Next Crisis Facing Elderly Americans

## An unemployed 65-year-old litigant is among millions of seniors still paying off tuition.

by **Natalie Kitroeff**

December 18, 2015, 6:00 AM CST

From                                              | Subscribe | Reprints

Robert Murphy is 65 and broke. He hasn't worked since 2002, when he lost his job as the president of Thermo BLH, a manufacturing company in Canton, Mass., after it moved operations overseas. He and his wife, Eileen, live on her salary as a teacher's aide, which comes to about $13,200 a year. His bank recently began foreclosure proceedings on his house in Duxbury, Mass., which was worth less than his mortgage. Four years ago, hoping for a fresh start, he declared bankruptcy. But there's one debt he hasn't been able to erase: the $246,500 he amassed paying for his three children to attend college.

Case 15-20184    Doc# 79-13    Filed 12/16/16    Page 1 of 5

From 2001 to 2007, Murphy took out 12 Parent PLUS loans originally valued at $220,765. Like those made directly to students, Parent PLUS loans are federally backed and almost impossible to discharge—that is, to be forgiven. The total outstanding education loans held by people 65 and older, including debt that financed their own schooling and their children's, grew to $18.2 billion in 2013, the most recent year available from the U.S. Government Accountability Office (GAO), from $2.8 billion in 2005. That's twice as fast as the overall growth in student debt. The number of borrowers age 60 and up has increased to 2.2 million, from 700,000 in 2005, according to the Federal Reserve Bank of New York.

Twenty-seven percent of education loans held by people age 65-74 were in default in 2013, meaning they hadn't made a payment in 270 days or more. More than half of education loans held by people 75 and older were in default. And the government can garnish wages or suspend tax refunds for anyone who fails to pay their student loans, but it has an extra tool when it comes to senior citizens: taking money out of their Social Security payments. In 2013, 155,000 seniors lost part of their retirement benefit to repay education debt, up from 31,000 in 2002, according to the GAO. "There's no statute of limitations, so these loans go with you to your death," says John Rao, a lawyer with the National Consumer Law Center, a consumer rights nonprofit. "That makes it different for someone who is elderly who might think at a certain point in their life they are immune from collections."

Most forms of consumer debt can be canceled after people file for bankruptcy protection. Education debt is the one exception. Congress said in the 1970s that such debt can go away only if a debtor can prove repaying it would impose an "undue hardship." Acting as his own attorney, Murphy has spent the past three years arguing in court that he should be covered by the standard. On Dec. 10 his case was heard by a federal appeals court in Boston. In court filings, Murphy has calculated that even if he were able to find a job paying $50,000 a year until he turned 77, the balance of his loans would still grow to $500,000—an impossible sum to repay.

Case 15-20184    Doc# 79-13    Filed 12/16/16    Page 2 of 5

Congress never defined undue hardship, so it's been left to the courts to determine just how desperate someone needs to be to qualify for relief. Bankruptcy judges have said that to get education loans wiped away, borrowers must show their entire lives would otherwise be characterized by a "certainty of hopelessness" or that repaying the debt "strips [the debtor] of all that makes life worth living."

"Creditors have been able to stack the deck in their favor as they have litigated what undue hardship means," says Rafael Pardo, a law professor at Emory University, who filed a brief on Murphy's behalf. At the Dec. 10 hearing, attorneys representing a debt collector that works for the U.S. Department of Education described the moral hazard built into letting Murphy clear his Parent PLUS balances: "Here we have somebody who is potentially on the verge of considering retirement, and is unemployed, and then takes out seven loans in succession over a course of years ... and then seeks to come back and say, 'Oh, I am getting up there in years, and I'm unemployed.'"

If borrowers run into trouble, the Education Department would prefer they enter a repayment plan than be allowed to eliminate the debt altogether. "This is the problem with a bankruptcy discharge: It is permanent," Jeffrey Clair, a government attorney, argued at the appeals hearing on Murphy's case. "Once the debt is discharged, it is gone, and no change in economic circumstances that might occur one year or three years or five years hence is going to result in any substantive recovery for the government."

Yet some say that because the bankruptcy exemption for education debt can allow financial hardship to worsen as people age, it winds up costing the government in other ways, such as increased social services. "Congress broke the system, and it's their fault that we didn't have just a little bit of debt being extinguished each year based on some going bankrupt," says Greg Zoeller, the Republican attorney general of Indiana, who has urged Indiana lawmakers to oppose federal rules allowing education debt collectors to auto-dial borrowers' cell phones. "They should take a little credit for the [money] that's

ENGEL, Case No. 15-20184
Doc. 75, n.201
As viewed on 12/15/2016

uncollectible," he says. "It should be in bankruptcy, and it's not."

On Dec. 10 a group of Democratic senators led by Ron Wyden of Oregon and Sherrod Brown of Ohio introduced a bill that would stop the government from garnishing Social Security to pay federal debts, including student loans. "Americans are getting hit by a wrecking ball of increasing college costs, and the last thing they can afford is to have their Social Security benefits reduced to pay off student loans," Wyden said in a statement.

Murphy's kids graduated from Loyola University Maryland and Bridgewater State University, and they are currently employed, according to court filings. Judge Ojetta Rogeriee Thompson, one of the three judges considering their father's appeal, said during oral arguments that his situation seemed sufficiently hopeless to merit forgiveness: "If this doesn't constitute undue hardship, what would?"

**The bottom line:** *The amount of education debt held by people 65 and older ballooned to $18.2 billion in 2013, from $2.8 billion in 2005.*

ENGEN, Case No. 15-20184
Doc. 75, n.20
As viewed on 12/15/2016

Terms of Service  Trademarks  Privacy Policy
©2016 Bloomberg L.P. All Rights Reserved
Careers  Made in NYC  Advertise  Ad Choices      Website Feedback  Help

Case 15-20184    Doc# 79-13    Filed 12/16/16    Page 4 of 5

ENGEN, Case No. 15-20184
Doc. 75, n.201
As viewed on 12/15/2016

Case 15-20184     Doc# 79-13     Filed 12/16/16     Page 5 of 5